In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Stephan Walter ADDISON, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Stephan Walter ADDISON, Respondent.

Supreme Court

*No. 2010AP3014–D.—Decided April 4, 2012.*

2012 WI 38

(Also reported in 813 N.W.2d 201.)

16

¶ 1. PER CURIAM. This is a companion case to *In re Disciplinary Proceedings Against Butler,* 2012 WI 37 (No. 2010AP3013–D), which is being released at the same time as this opinion. Both cases involve the same underlying set of facts and one or more criminal convictions arising from those facts. As in *Butler,* we determine whether discipline reciprocal to that imposed by the Supreme Court of Illinois, which in this case would be a 60–day suspension, should be imposed on Attorney Stephan Walter Addison. Although the conduct of Attorney Addison at issue here, like the conduct of Attorney Benjamin C. Butler, is both unprofessional and unseemly, and although we may have imposed a more severe level of discipline if the Office of Lawyer

Regulation (OLR) had prosecuted this matter directly in the first instance rather than filing a reciprocal discipline complaint, given the standards in our rules that apply to reciprocal discipline situations, we impose the same 60–day suspension on Attorney Addison's license to practice law in Wisconsin that was imposed in Illinois. Because Attorney Addison agreed to the imposition of reciprocal discipline before a referee was appointed, we do not impose costs on him for this proceeding.

¶ 2.   On December 14, 2010, the OLR filed a formal disciplinary complaint against Attorney Addison for the imposition of reciprocal discipline and a motion requesting the court to issue an order to show cause to Attorney Addison. On March 31, 2011, the court ordered Attorney Addison to inform the court of any claim, predicated on the grounds set forth in SCR 22.22(3),[1] why the imposition of discipline identical to that imposed by the Supreme Court of Illinois would be unwarranted, and of the factual basis for any such claim. On April 11, 2011, Attorney Addison filed a response stating that he was not making any claim under SCR 22.22(3) and that he was not raising any objection to the imposition of discipline identical to that imposed in Illinois.

---

[1] SCR 22.22(3) states as follows:

The supreme court shall impose the identical discipline or license suspension unless one or more of the following is present:

(a) The procedure in the other jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process.

(b) There was such an infirmity of proof establishing the misconduct or medical incapacity that the supreme court could not accept as final the conclusion in respect to the misconduct or medical incapacity.

(c) The misconduct justifies substantially different discipline in this state.

18

¶ 3. Because this matter involves allegations of serious misconduct that occurred in Wisconsin and resulted in Attorney Addison's December 2006 criminal convictions in a Wisconsin court, on September 23, 2011, this court issued an order directing the OLR to advise the court as to why it had chosen in this matter to seek the imposition of reciprocal discipline under SCR 22.22 rather than to conduct its own investigation and pursue its own disciplinary complaint under SCRs 22.11 through 22.16.

¶ 4. The OLR filed a response to the court's order on October 12, 2011. Its response states that it first learned of the criminal charges against Attorneys Addison and Butler in December 2005. It opened grievance investigations against them at that time, but placed those investigations on hold pending the result of the criminal actions in Green Lake County, Wisconsin. The OLR's response indicates that, for a number of reasons, it will commonly place investigations in which there are pending criminal charges on hold until those criminal charges have been resolved.

¶ 5. In this situation, after the OLR received notice of the convictions and sentences imposed on Attorneys Addison and Butler in December 2006, it reopened its investigations. Approximately one month later, however, it was notified that the Illinois Attorney Registration and Disciplinary Commission (the Illinois Commission) had also opened a grievance investigation against Attorneys Addison and Butler. The Illinois Commission expressly informed the OLR that it had set aside resources to conduct an investigation of the matter that would go beyond the record compiled in the criminal case and that it intended to conduct supplemental interviews of the victim and other witnesses.

19

¶ 6. The OLR's response states that after it was informed of the Illinois Commission's investigation, the OLR director made the decision to allow the Illinois Commission to take the lead role in investigating the conduct of Attorneys Addison and Butler and in seeking discipline because both attorneys were practicing law primarily in Illinois for Illinois law firms. The OLR further explains that it wanted to avoid the duplicative use of investigatory resources in the two jurisdictions. It states that it is common for it and other lawyer regulatory agencies in other jurisdictions to allow the "primary jurisdiction," i.e., the jurisdiction in which the attorney is primarily practicing, to investigate and impose discipline in the first instance, with the other applicable jurisdictions then seeking the imposition of reciprocal discipline.

¶ 7. The OLR's response further asserts that it communicated periodically with the Illinois Commission during the more than three years in which the Illinois Commission conducted its investigation and its prosecution of the Illinois disciplinary action. The OLR notes that it was ultimately able to review the more than 1,700 pages of discovery from the criminal actions that Attorneys Addison and Butler provided to the Illinois Commission, plus copies of a video discovery deposition of a witness, the discovery depositions of the two respondent attorneys, expert witness information, and other video and audio evidence. In addition, the Illinois Commission provided to the OLR another 1,400 pages of documents from its own investigation. The OLR asserts that, following the conclusion of the Illinois disciplinary proceeding, it reviewed and evaluated these voluminous documents before it reached the determination not to conduct its own independent investigation and instead to seek the imposition of reciprocal discipline.

20

¶ 8.   Because the record in this proceeding still did not contain information regarding the factual basis for the felony to which Attorney Addison ultimately pled no contest, we issued a second order directing the OLR to state the factual basis for the felony charge and to provide public documents from the criminal case that related to the factual basis. The OLR's response contained a stipulation filed in the Green Lake County action at the time Attorney Addison entered his plea to a reduced charge, as well as the transcripts of the plea and sentencing hearings. The content of the criminal stipulation will be discussed later in this opinion.

¶ 9.   Given that this matter has been presented to us in the context of a request for the imposition of reciprocal discipline, we are constrained to follow the rules that we have adopted for such proceedings. *See* SCR 22.22. We therefore shall impose the identical discipline imposed in the other jurisdiction unless we determine that one of the three exceptions set forth in SCR 22.22(3) applies. In assessing whether one of those exceptions applies, we further are limited to the record in this matter, which primarily consists of the OLR's complaint, the documents from the Illinois disciplinary proceeding that have been filed by the OLR, and the documents relating to Attorney Addison's no contest plea to the felony charge in the Green Lake County criminal action that have also been submitted by the OLR. In particular, the stipulations entered in the Green Lake County criminal cases and in the Illinois disciplinary proceeding are the only sources *in the record of this proceeding* of facts that have been proven or stipulated regarding the underlying events. The factual recitation that follows is primarily taken from those stipulations.

21

¶ 10.   Attorney Addison was admitted to the practice of law in Wisconsin in June 2004. He was also admitted in 2004 to the practice of law in Illinois. The Report and Recommendation of the Illinois Commission's Hearing Board[2] stated that as of the time of the Illinois Report, Attorney Addison was engaged as an outside consultant for a private equity company in Wisconsin. He also maintained a solo legal practice that focused on real estate transactions in Wisconsin and Illinois.

¶ 11.   Prior to August 5, 2005, while he was practicing for a large Chicago law firm, Attorney Addison made plans with Attorney Butler, a law school classmate, for a weekend reunion at a summer house in Green Lake, Wisconsin, that was owned by Attorney Addison's family. On Friday, August 5, 2005, Attorneys Addison and Butler picked up supplies for the weekend, including alcoholic beverages such as beer, vodka, and whiskey. From that Friday afternoon through the daytime hours of Saturday, Attorneys Addison and Butler and their friends socialized and drank alcohol. At approximately 11:00 p.m. on August 6th, they drove to a tavern in Green Lake, where they consumed additional alcoholic beverages. At approximately 1:00 a.m. on Sunday, August 7th, the group drove to another tavern in Ripon, where they continued to consume alcoholic beverages.

¶ 12.   Shortly before the 2:00 a.m. bar closing time, Attorney Addison met a woman, D.P., on the dance floor. After the bar closed, D.P. agreed to drive Attorneys Addison and Butler back to Green Lake to the Addison summer house.

---

[2] This opinion will refer to this document and this entity, respectively, as the "Illinois Report" and the "Illinois Hearing Board."

¶ 13. The Illinois stipulation of facts continues that a few blocks from the Addison summer home, D.P. pulled her car into a boat landing and placed the vehicle in park. The stipulation does not provide details of what occurred next. It merely states that Attorney Addison, "while intoxicated, engaged in sexual activity with [D.P.] while on the hood of a motor vehicle that was parked on a public boat ramp in Green Lake, Wisconsin." D.P. subsequently complained to the police about the actions of Attorneys Addison and Butler, and Attorney Addison gave a statement to law enforcement in response to her complaint.

¶ 14. The State of Wisconsin initially charged Attorney Addison with five criminal offenses in Green Lake County circuit court: three counts of first-degree sexual assault, one count of fourth-degree sexual assault, and one count of false imprisonment. *State v. Addison,* Green Lake County Case No. 05CF90.

¶ 15. Ultimately, the State filed an amended information that charged Attorney Addison with three counts: one felony count of second-degree reckless endangerment, contrary to Wis. Stat. § 941.30(2), and two misdemeanor counts of sexual gratification in public, contrary to Wis. Stat. § 944.17(2)(a). Attorney Addison then pled no contest to the three counts set forth in the amended information. The stipulation in the criminal case set forth the factual basis for the second-degree reckless endangerment count as follows:

> We have agreed that the factual basis underlying the plea to this charge is that on August 7, 2005, in Green Lake County, Wisconsin, Stephan Addison and Benjamin Butler engaged in sexual activity with [D.P.] in such a manner that [D.P.] could have been harmed; more specifically, that the sexual activity occurred

while [D.P.] was on the hood of an automobile on which she could have been injured and from which she could have fallen.

¶ 16.  On the felony reckless endangerment count, the circuit court imposed and stayed a sentence of five years of initial confinement and five years of extended supervision, and placed Attorney Addison on probation for a period of three years, with a condition that Attorney Addison complete 300 hours of community service. On the two misdemeanor sexual gratification counts the circuit court sentenced Attorney Addison to 30 days in jail and ordered him to complete an additional 200 hours of community service.

¶ 17.  According to the Illinois Report, Attorney Addison completed his jail sentence and all of his community service obligations. He was released from probation on December 9, 2009.

¶ 18.  The Illinois Commission initiated a disciplinary proceeding against Attorney Addison as a result of his actions in August 2005 and his subsequent criminal convictions. Attorney Addison ultimately entered into a stipulation in that proceeding setting forth the facts described above and requesting the imposition of a 60–day suspension of his Illinois law license as discipline for his misconduct. Citing a number of cases relied upon by the administrator of the Illinois Commission and Attorney Addison, the Illinois Hearing Board accepted the stipulation and recommended that Attorney Addison's Illinois law license be suspended for 60 days for professional misconduct that consisted of (1) violating Rule 8.4(a)(3) of the Illinois Rules of Professional Conduct (IRPC) by committing a criminal act that reflects adversely on his honesty, trustworthiness or fitness as a lawyer in other respects; (2) engag-

24

ing in conduct that is prejudicial to the administration of justice, in violation of IRPC Rule 8.4(a)(5); and (3) engaging in conduct which tends to defeat the administration of justice or bring the courts or legal profession into disrepute, in violation of Illinois Supreme Court Rule 770.

¶ 19. The Illinois Report also included some stipulated evidence offered in mitigation for Attorney Addison's misconduct. Specifically, the Illinois Report noted that, like Attorney Butler, Attorney Addison had been forced to resign as an associate with a large Chicago law firm. The Illinois Report also stated that Attorney Addison had not been previously disciplined, had expressed remorse, and had cooperated with the Illinois disciplinary process. The Illinois Report noted that Attorney Addison had fulfilled his community service obligations by doing manual labor for the Town of Brooklyn and by providing pro bono services to a number of law-related non-profit entities in Wisconsin and Illinois. The Illinois Report also stated that if the matter had proceeded to a contested hearing, Attorney Addison would have presented character witness testimony from at least six witnesses, including attorneys familiar with his reputation in both Chicago and Madison. The Illinois Report stated that Attorney Addison "is ashamed of his actions and recognizes that his conduct was unacceptable." Finally, there is no mention in the Illinois Report of any aggravating factors.

¶ 20. The Supreme Court of Illinois accepted the recommendation of the Illinois Hearing Board and suspended Attorney Addison's license to practice law in that state for a period of 60 days.

¶ 21. The OLR's complaint in this matter asks that Attorney Addison's license to practice law in Wisconsin be suspended for an identical period of 60 days as

reciprocal discipline under SCR 22.22(3). As noted above, Attorney Addison does not object to the OLR's request.

¶ 22. The initial allegations made against both Attorney Addison and Attorney Butler in the respective criminal complaints against them were extremely troubling. Those allegations, however, have not been proven, and we are bound by the facts as they have been proven or stipulated in the record before us. In the criminal action the state eliminated any charges of sexual assault. Thus, there is no finding of fact in any proceeding, whether criminal or disciplinary, in this state or in Illinois, that Attorney Addison engaged in sexually assaultive conduct. Although Attorney Addison was convicted of a felony that involves placing another person in danger of death or great bodily harm, the stipulated factual basis for that crime was that Attorney Addison's contact with the victim created a risk that she might have fallen off the hood of an automobile and become injured. While the Illinois Hearing Board properly concluded that the three criminal charges to which Attorney Addison ultimately pled no contest are serious matters that reflect adversely on his trustworthiness or fitness as a lawyer in other respects, we must base our decision on these facts as they have been stipulated and not on what the factual findings might possibly have been.

¶ 23. Moreover, it is important to remember that this matter is being presented to us in the context of a reciprocal discipline matter, not as a review of a referee's report or a stipulation in the first instance. As commonly occurs in such situations, the OLR allowed the Illinois Commission to take the lead in investigating and prosecuting Attorney Addison's professional misconduct because Illinois was his primary place of prac-

26

tice and Illinois committed significant resources to investigating the matter. According to the OLR, it maintained communication with the Illinois Commission throughout the three-year pendency of the Illinois investigation and disciplinary proceeding. In addition, it reviewed the voluminous documents provided by the Illinois Commission before it ultimately determined to seek the imposition of reciprocal discipline.

¶ 24. In a reciprocal discipline matter our rules require us to impose the identical discipline rendered by the other jurisdiction unless one of the three listed exceptions applies. Keeping in mind that the OLR has not asserted that Attorney Addison's conduct requires a substantially different level of discipline in this state, *see* SCR 22.22(3)(c), we do not find that any exception applies. Consistent with our rules, therefore, we impose a 60–day suspension of Attorney Addison's license to practice law in Wisconsin, as discipline reciprocal to that imposed in Illinois. Moreover, as is often the case in reciprocal discipline matters, because Attorney Addison essentially agreed to the imposition of reciprocal discipline and it was not necessary to appoint a referee, we do not require him to pay the costs of this proceeding.

¶ 25. IT IS ORDERED that the license of Stephan Walter Addison to practice law in Wisconsin is suspended for a period of 60 days, effective as of May 7, 2012.

¶ 26. IT IS FURTHER ORDERED that Stephan Walter Addison shall comply with the requirements of SCR 22.26 pertaining to the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 27. ANN WALSH BRADLEY, J., withdrew from participation.

¶ 28 PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). I dissent because I would reject the parties' stipulation asking this court to suspend Steven Walter Addison's license to practice law in Wisconsin for 60 days as reciprocal discipline to that imposed by Illinois for his admitted acts of criminal conduct that occurred in Wisconsin, and I would require the Office of Lawyer Regulation (OLR) to apply Wisconsin's Rules of Professional Conduct for Attorneys to Attorney Addison's conduct.

¶ 29.   Attorney Addison's convictions were the result of a plea bargain. The criminal acts which he admitted committing constitute one count of second-degree reckless endangerment, contrary to Wis. Stat. § 941.30(2), which is a Class G felony, and two counts of sexual gratification in public, contrary to Wis. Stat. § 944.17(2)(a), which are Class A misdemeanors.

¶ 30.   In order to accept a plea and convict a defendant of second-degree reckless endangerment, the circuit court must determine that there are facts sufficient to prove that (1) Attorney Addison endangered the safety of another human being; and (2) he did so by criminally reckless conduct. *See* Wis JI—Criminal 1347. "Criminal recklessness" is defined in Wis. Stat. § 939.24(1) as conduct that "creates an unreasonable and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk."

¶ 31.   Supreme Court Rule (SCR) 22.22(3) directs this court in reciprocal discipline matters to impose identical discipline to that imposed by another state *unless* the misconduct justifies substantially different discipline in this state. SCR 22.22(3)(c). It seems probable that creating an "unreasonable and substantial" risk of great bodily harm when the defendant "is aware

28

of that risk," together with two misdemeanor convictions, would have resulted in more than a 60–day license suspension if OLR had begun its own investigation in light of SCR 20:8.4(b),[1] rather than relying on the judgment of the State of Illinois.

¶ 32. My conclusion is supported by discipline meted out for past criminal convictions, which we have held violate SCR 20:8.4(b). *See In re Disciplinary Proceedings Against Compton,* 2010 WI 112, ¶¶ 1, 7, 329 Wis. 2d 318, 787 N.W.2d 831 (two years suspension based on conviction of possession of narcotic drugs, a Class I felony, and bail jumping, a Class H felony, based on the use of those drugs); *In re Disciplinary Proceedings Against Soldon,* 2010 WI 27, ¶¶ 1, 6, 324 Wis. 2d 4, 782 N.W.2d 81 (six months suspension based on retail theft read-in and conviction of fleeing a law enforcement officer, a Class I felony); *In re Disciplinary Proceedings Against George,* 2008 WI 21, ¶¶ 3, 30, 308 Wis. 2d 50, 746 N.W.2d 236 (four years and three months suspension based on federal conviction of conspiracy to commit offenses against federal programs in violation of 18 U.S.C. § 371); *In re Disciplinary Proceedings Against Gral,* 2007 WI 22, ¶¶ 1, 4, 299 Wis. 2d 160, 727 N.W.2d 495 (suspension of three years based on federal conviction of mail fraud).

¶ 33. In my view, a conviction based conduct that creates an unreasonable and substantial risk of great bodily harm when the defendant is aware of that risk is

[1] SCR 20:8.4 provides in relevant part: "It is professional misconduct for a lawyer to:

. . .

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]"

at least as serious as the crimes that form the bases for the suspensions above. Because I conclude that the convictions at issue here would justify substantially different discipline in Wisconsin than has resulted in Illinois and that SCR 22.22(3)(c) requires this court to reject the parties' stipulation on that basis, I respectfully dissent.

¶ 34. I am authorized to state that Justice N. PATRICK CROOKS joins in this dissent.