# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1832-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against James C. Ritland, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant-Respondent-Cross-Appellant, |
| | v. |
| | James C. Ritland, Respondent-Appellant-Cross-Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST RITLAND

| | |
|---|---|
| OPINION FILED: | April 22, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

JUSTICES:

Per Curiam. ROGGENSACK, C.J. dissents, joined by ZIEGLER and REBECCA GRASSL BRADLEY, JJ.

ATTORNEYS:

For the respondent-appellant-cross-respondent, there were briefs filed by *James C. Ritland*, Black River Falls.

For the complainant-respondent-cross-appellant, there was a brief filed by *Kim M. Kluck* and *Office of Lawyer Regulation*, Madison.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP1832-D

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against James C. Ritland, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant-Respondent-Cross-Appellant,**

    **v.**

**James C. Ritland,**

      **Respondent-Appellant-Cross-Respondent.**

**FILED**

**APR 22, 2021**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. This disciplinary matter comes to the court on Attorney James C. Ritland's appeal and the Office of Lawyer Regulation's (OLR) cross-appeal of a report and recommendation of Referee Allan Beatty. After holding an evidentiary hearing, the referee concluded that the OLR had proven the sole misconduct charge asserted in its complaint; namely, that Attorney Ritland's conduct resulting in convictions

for two counts of attempted adultery and one count of disorderly conduct reflected adversely on his honesty, trustworthiness, and fitness as a lawyer in other respects. See Supreme Court Rule (SCR) 20:8.4(b).[1] As a sanction, the referee recommended that the court suspend Attorney Ritland's Wisconsin law license for three months and order him to pay the full costs of this disciplinary matter, which total $21,017.24 as of March 2, 2020. Restitution is not at issue; because this case solely concerns Attorney Ritland's sexual misconduct, there are no funds to restore.

¶2 Both Attorney Ritland and the OLR have appealed the referee's report and recommendation. In his appeal, Attorney Ritland generally contests the sufficiency of the evidence against him and claims his behavior merits, at most, a public reprimand. In its cross-appeal, the OLR argues that a six-month suspension——not a three-month suspension, as the referee recommended——is warranted.

¶3 After reviewing this matter and considering Attorney Ritland's appeal and the OLR's cross-appeal, we accept the referee's factual findings, and we agree with the referee that Attorney Ritland committed the charged SCR 20:8.4(b) violation. We deem the referee's recommended three-month suspension

---

[1] SCR 20:8.4(b) provides: "It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

insufficient: Attorney Ritland's conduct and our case law call for a two-year suspension. We impose full costs.

¶4 The OLR initiated this disciplinary proceeding with the filing of a one-count complaint in September 2018, alleging an SCR 20:8.4(b) violation. Attorney Ritland filed an answer in which he denied any misconduct.

¶5 The case proceeded through discovery and to an evidentiary hearing in August 2019, which featured testimony from thirteen witnesses.

¶6 In October 2019, the referee filed his report. The following factual summary is drawn from that report.

¶7 Attorney Ritland has held a Wisconsin law license since 1978, and has an otherwise clean disciplinary history. The wrongdoing involved in this case centered on his sexual misconduct with two women: Z.H. and M.F.

¶8 In 2013, Attorney Ritland met Z.H. while in the checkout line at a Walmart. After Z.H. exited the store, Attorney Ritland invited her into his car, gave her his business card for his law office, and told her to contact him if she needed help or money. Several months later, Z.H. called Attorney Ritland, and he invited her to come to his law office after regular business hours. Upon luring Z.H. to his office and isolating her as he was the only one present, he gave her $40, touched her breasts outside of her clothing, and received oral sex from her. On another occasion, Z.H. again called Attorney Ritland and went to his office. He gave her $40, after which she displayed her breasts and then left, promising to

3

return to complete the sexual encounter. Subsequent to these two incidents, Attorney Ritland visited Z.H. in jail, at a time when she was represented by a different attorney. Attorney Ritland informed jail personnel that he was visiting Z.H. as her attorney.

¶9 Attorney Ritland knew the other woman involved in this case, M.F., through his representation of her in numerous criminal matters. Attorney Ritland knew that M.F. had substance addiction problems. Attorney Ritland also knew that M.F. had financial troubles, as she consistently did not have the resources to pay modest bail amounts.

¶10 Attorney Ritland occasionally paid M.F.'s bail. For example, in January 2015, Attorney Ritland signed a surety bond form and posted a $100 cash bail for M.F. in a matter in which he represented her. The following day, Attorney Ritland revoked his surety bond but informed the clerk of court that the $100 belonged to M.F.

¶11 Attorney Ritland ceased representing M.F. in February 2015, after the district attorney warned him that he may have a conflict of interest in continuing to represent her given that his personal checkbook was found amongst items believed to be stolen by M.F.

¶12 Attorney Ritland admitted at his deposition in this matter that after he withdrew from representing M.F., he had sexual contact with her at his office on a number of occasions. The sexual contact included Attorney Ritland touching M.F.'s breasts, and, in one instance, M.F. performing oral sex on him.

4

¶13 After he withdrew from representing M.F., Attorney Ritland continued to provide money and other benefits to her. In March 2015, Attorney Ritland posted a $250 cash bail for M.F. in a criminal matter. In May 2015, Attorney Ritland and M.F. went to a casino together, where Attorney Ritland provided M.F. with money. In August 2015, Attorney Ritland told law enforcement that he did not want to pursue charges against M.F. even though she had altered a check originally made payable to him by making herself the payee. In March 2016, Attorney Ritland posted $300 cash bail for M.F. in a criminal matter; visited her in jail, identifying himself on the jail visitor log as an attorney even though he did not represent her; and gave her a note, received as a hearing exhibit, that said: "I still want 6 free ones. I got you out of jail." The referee found that the phrase "6 free ones" referred to sexual interactions.

¶14 As of September 2016, M.F. owed Attorney Ritland hundreds or perhaps thousands of dollars in legal fees. After Attorney Ritland learned he would be charged with criminal offenses pertaining to his sexual contacts with M.F., he removed information pertaining to M.F. from his office's billing records.

¶15 In 2017, the State charged Attorney Ritland with four counts of solicitation of prostitution, two counts of attempted adultery, four counts of prostitution, one count of disorderly conduct, and one count of maintaining a drug trafficking place. Attorney Ritland ultimately pled no contest to, and was convicted of, one count of attempted adultery related to his

5

conduct with Z.H., another count of attempted adultery related to his conduct with M.F., and one count of disorderly conduct. See State v. Ritland, Jackson County Case No. 2016CF177. The remaining counts were dismissed and read-in for sentencing purposes.

¶16 The circuit court withheld sentence for Attorney Ritland, placed him on probation for twelve months, and required him to serve twenty-five days in jail. According to the sentencing transcript included in the record before us, the circuit court commented at sentencing that Attorney Ritland's conduct "behind closed doors" made him "a totally different person" than the one the public knew. The circuit court observed that Attorney Ritland's "character is sort of split down the middle" between his "public persona and [his] secret[] life."

¶17 This disciplinary case followed. The OLR alleged a single count in its complaint:

> By engaging in conduct which included paying money to M.F. and Z.H. to perform sex acts and being convicted on two counts of attempted adultery and one count of disorderly conduct for that underlying conduct, [Attorney] Ritland violated SCR 20:8.4(b).

¶18 In his report, the referee determined that "[b]y evidence which is clear, satisfactory and convincing," Attorney Ritland "has committed the violation alleged in the Complaint." Briefly summarized, the referee determined in his report that Attorney Ritland abused his professional status as a lawyer in committing his criminal acts, which consisted of cajoling

6

vulnerable women into having adulterous contact with him at his law office. His actions showed a lack of trustworthiness and reflected poorly on his professional judgment and ability.

¶19 In evaluating the appropriate level of discipline, the referee weighed various aggravating and mitigating factors. On the aggravating side of the scale, Attorney Ritland's victims were vulnerable because they were burdened with substance abuse and/or financial problems. He engaged in a pattern of misconduct. He did not appreciate the wrongful nature of his conduct, notwithstanding having been criminally convicted of three offenses. He showed no remorse. On the mitigating side of the scale, the referee noted that Attorney Ritland has no prior discipline, and he has contributed to the community through volunteer efforts in his church and with youth organizations. Ultimately, the referee recommended that this court suspend Attorney Ritland for three months and impose full costs against him.

¶20 As mentioned above, both Attorney Ritland and the OLR have appealed from the referee's report. We turn first to the arguments in Attorney Ritland's appeal.

¶21 Attorney Ritland has taken a scattershot approach to his appeal, raising seven separate issues, one of which has seven subparts. We address the minimally developed claims as best we can, grouping like contentions where possible. Some arguments, however, are too inadequately developed to warrant a response. See State v. Pettit, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

7

¶22 Generally speaking, Attorney Ritland challenges the sufficiency of the evidence against him. He dismisses Z.H.'s testimony as not credible and unsupported by physical evidence. He argues that "no facts concerning [M.F.] should be considered since she did not testify at the [disciplinary] hearing" (all caps removed). He claims that he never pressured M.F. into unwanted sexual contact. He suggests that M.F., and not he, wrote the note recovered by jail authorities that stated, "I still want 6 free ones. I got you out of jail." He claims that it was appropriate for him to visit M.F. in jail and sign the jail visitor log as an attorney, even though he did not represent M.F. at the time. He claims that there is no factual connection between his convictions for attempted adultery and disorderly conduct and his fitness to practice law. Ultimately, Attorney Ritland argues, "the Court should find that there was no ethical violation which would warrant discipline in this case."

¶23 Attorney Ritland alternatively argues that, if he did commit an ethical violation, the referee's recommended three-month suspension is excessive. Attorney Ritland claims that the referee gave insufficient weight to certain alleged mitigating factors; e.g., his volunteer work within the community. He also claims that this court should be closely guided by two cases arising out of a shared set of facts, In re Disciplinary Proceedings Against Butler, 2012 WI 37, 340 Wis. 2d 1, 811 N.W.2d 807, and In re Disciplinary Proceedings Against Addison, 2012 WI 38, 340 Wis. 2d 16, 813 N.W.2d 201. The Butler and

Addison cases held that discipline identical to that imposed in Illinois—30- and 60-day suspensions, respectively—was warranted as reciprocal discipline for convictions pursuant to Attorney Butler's and Attorney Addison's negotiated no contest pleas to one felony count of second-degree reckless endangerment and, in Attorney Addison's case, two additional misdemeanor counts of sexual gratification in public, related to their close-in-time sexual activity with the same woman. Attorney Ritland argues that Attorney Butler's and Attorney Addison's conduct was far worse than his, for at most, "the disputed testimony may have established that I paid [Z.H.] for sex on one occasion. This act of prostitution, although illegal, and involves taking advantage of her financial weakness using my money, is far different" than the conduct at issue in Butler and Addison, Attorney Ritland claims. Attorney Ritland argues that because Attorney Butler and Attorney Addison received "brief suspensions, my discipline should be far less: I suggest a public reprimand."

¶24 In its appellate response and cross-appeal, the OLR criticizes Attorney Ritland's appellate arguments as amorphous and insufficiently developed. It submits that Attorney Ritland failed to show that any of the referee's factual findings are clearly erroneous. The OLR also argues that the referee properly determined that Attorney Ritland's criminal acts reflect poorly on his fitness as a lawyer. Finally, the OLR insists that the referee's recommended three-month suspension is inadequate, and that a six-month suspension is appropriate so

that, before resuming practice, Attorney Ritland will need to demonstrate all of the fitness criteria in SCR 22.29 and SCR 22.31 to the satisfaction of the court.

¶25 The matter is now before this court to review the referee's report and recommendation, informed by the parties' arguments made in their briefs. When reviewing a referee's report and recommendation, we affirm the referee's findings of fact unless they are clearly erroneous, but we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶26 To begin, we reject Attorney Ritland's challenges to the referee's factual findings. We may overturn a referee's factual findings only if those findings are clearly erroneous. In re Disciplinary Proceedings Against Boyle, 2015 WI 110, ¶41, 365 Wis. 2d 649, 872 N.W.2d 637. Here, the referee chose to believe the version of events to which Z.H. testified: that Attorney Ritland gave her his business card in a Walmart parking lot and said she should call him if she needed help or money, and that on two occasions in the months following this encounter, he paid her money to engage in sexual activity at his law office. The referee also chose to believe evidence showing that Attorney Ritland provided money or benefits to M.F. in

10

exchange for engaging in sexual activity. It is not our place to reappraise the evidence unless it plainly fails to support the findings of the referee——and that is not the case here.[2]

¶27 We also reject any attempt by Attorney Ritland to argue that the outcome of his criminal case, which included the dismissal of the most serious charges against him, requires this court to close its eyes to what the OLR proved Attorney Ritland had done. Supreme Court Rule 20:8.4(b) provides that it is professional misconduct to "[c]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." (Emphasis added.) The rule does not require that an attorney actually have been convicted of a crime for the rule to apply; we discipline for conduct, not convictions. See In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶47 n.12, 305 Wis. 2d 71, 740 N.W.2d 125 ("[A]n attorney's criminal act can support a SCR 20:8.4(b) violation even if the attorney is never charged or convicted.") Thus, an SCR 20:8.4(b) violation may be found—— even absent a conviction——if the record contains clear, satisfactory, and convincing evidence that the attorney engaged in criminal acts that reflect adversely on his or her fitness to

---

[2] Contrary to Attorney Ritland's argument, the fact that M.F. did not testify at the disciplinary hearing does not mean that "no facts concerning [M.F.] should be considered." See, e.g., Guillaume v. Wisconsin-Minnesota Light & Power Co., 161 Wis. 636, 639, 155 N.W. 143 (1915) (Facts in a civil case may be established by circumstantial evidence alone, where the circumstances lead fairly and reasonably to the conclusion sought to be established.)

practice. See, e.g., In re Disciplinary Proceedings Against Peterson, 2006 WI 41, 290 Wis. 2d 74, 713 N.W.2d 101 (affirming an SCR 20:8.4(b) violation where the sole factual basis was an attorney's use of cocaine). Relatedly, we have held that a conviction alone——even a very serious one——does not necessarily demonstrate an attorney's unfitness to practice. See In re Disciplinary Proceedings Against Johns, 2014 WI 32, 353 Wis. 2d 746, 847 N.W.2d 179 (finding no SCR 20:8.4(b) violation despite an attorney's conviction for the vehicular homicide of his brother in light of evidence showing the exceedingly anomalous nature of the attorney's conduct and his full acceptance of responsibility for its tragic consequences).

¶28 Thus, whether Attorney Ritland's conduct violated SCR 20:8.4(b) is a "fact dependent inquiry," driven by the facts established in this disciplinary proceeding. See In re Disciplinary Proceedings Against Horsch, 2020 WI 10, ¶11, 390 Wis. 2d 99, 937 N.W.2d 925. To the extent that Attorney Ritland believes that the State's dismissal of certain charges automatically immunizes the conduct proven here from professional discipline, he is mistaken.

¶29 We are also unpersuaded by Attorney Ritland's argument that there is no factual connection between his convictions for attempted adultery and disorderly conduct and his fitness to practice law. It is true, as Attorney Ritland points out in his briefs, that the American Bar Association ("ABA") Comment [2] to ABA's Model Rule 8.4, upon which SCR 20:8.4 was based, states:

12

> Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offenses carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." <u>That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law.</u>

(Emphasis added.) Seizing on the highlighted language, Attorney Ritland argues that adultery necessarily is not an offense that reflects adversely on a lawyer's fitness to practice law.

¶30 This argument ignores the record before us. While Attorney Ritland asks us to look the other way because, in his view, his conviction was for an offense that has no connection to his fitness to practice law, we refuse to ignore the overwhelming evidence that bears squarely on his fitness to practice law; namely, evidence that he engaged in coerced or quid pro quo sexual relationships with vulnerable women. Attorney Ritland used his standing as an attorney and his law office to lure, isolate, and access Z.H. and M.F.; as the referee observed in his report, Attorney Ritland:

> [d]irectly involved his practice of law in his interactions with both [women] by giving [Z.H.] his business card, by hosting both of them at his law office and engaging in sexual activities with them there, [and] by visiting both of them at the [county] jail using his status as an attorney for access.

Furthermore, Attorney Ritland knew that both Z.H. and M.F. had financial troubles and, in M.F.'s case, substance abuse and legal troubles. Z.H.'s testimony——that Attorney Ritland paid

13

her to perform sex acts at his law office——is essentially undisputed; although Attorney Ritland claims her testimony was not credible, the referee decided otherwise, and we decline to second-guess him. See In re Disciplinary Proceedings Against Nunnery, 2009 WI 89, ¶40, 320 Wis. 2d 422, 769 N.W.2d 858 ("The referee is best situated to judge the credibility of witnesses.") As for Attorney Ritland's conduct with M.F., it was clearly exploitive of M.F.'s subordinate and vulnerable position; his jailhouse note that he expected "six free ones" from her in exchange for paying her bail says it all. On these facts, we have no hesitation finding that an ethical violation—— here, a violation of SCR 20:8.4(b)——has occurred.

¶31 In sum, then, based on the non-clearly-erroneous facts found by the referee, we hold that Attorney Ritland's behavior fell well below the standards of honesty, trustworthiness, and integrity required of all attorneys. We therefore adopt the referee's recommendation and hold that Attorney Ritland violated SCR 20:8.4(b).

¶32 We now turn to the question of the appropriate discipline to be meted out. As noted above, Attorney Ritland argues that, at most, a public reprimand is warranted, citing as support the relatively light suspensions (30 and 60 days) imposed in Butler and Addison.

¶33 We are not persuaded. Butler and Addison are not helpful authorities, as they were presented to us in the context of reciprocal discipline matters. In reciprocal discipline matters, our rules require that we impose the identical

14

discipline rendered by the other jurisdiction unless one of the three exceptions listed in SCR 22.22(3)[3] applies. The OLR did not assert that any of these exceptions applied to Attorney Butler's or Attorney Addison's conduct, and thus we imposed discipline reciprocal to that imposed in Illinois. See Butler, 340 Wis. 2d 1, ¶24; Addison, 340 Wis. 2d 16, ¶24. Here, we are not constrained by the rules governing reciprocal disciplinary proceedings.

¶34 The OLR argues that the referee's recommended three-month suspension is too light, and insists that a six-month suspension is in order. It cites two cases that it claims are particularly analogous to the facts of this case. In In re Disciplinary Proceedings Against Ridgeway, 158 Wis. 2d 452, 462 N.W.2d 671 (1990), we suspended an attorney for six months for having initiated and engaged in sexual contact with a client he

---

[3] SCR 22.22(3) provides:

(3) The supreme court shall impose the identical discipline or license suspension unless one or more of the following is present:

(a) The procedure in the other jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process.

(b) There was such an infirmity of proof establishing the misconduct or medical incapacity that the supreme court could not accept as final the conclusion in respect to the misconduct or medical incapacity.

(c) The misconduct justifies substantially different discipline in this state.

15

was representing as a public defender, where the client was facing probation revocation after absconding from a halfway house, and where the attorney furnished her with alcohol contrary to the terms of her probation. In In re Disciplinary Proceedings Against Gamino, 2005 WI 168, 286 Wis. 2d 558, 707 N.W.2d 132, we suspended an attorney for six months for having engaged in a sexual relationship with a client in one matter and a sexual relationship with a juvenile client's mother in another matter, and for making false representations about his conduct to a court and to the OLR investigators in that matter. In both cases, we noted that the disciplined attorneys had taken advantage of individuals in a vulnerable position for their own personal gratification. Ridgeway, 158 Wis. 2d at 453; Gamino, 286 Wis. 2d 558, ¶56. So too here, the OLR says.

¶35 We agree with the OLR that Ridgeway and Gamino are instructive cases. But we also note that these cases are 31- and 16-years-old, respectively. Over the ensuing years, we have applied increasing scrutiny to attorneys' sexual misconduct.

¶36 For example, in 2007, we adopted SCR 20:1.8(j), which deems sexual relations between an attorney and a current client to be professional misconduct, unless the sexual relationship predates the attorney-client relationship. The comments to this rule specifically address the fiduciary nature of the attorney-client relationship and the professional boundaries this fiduciary relationship necessitates:

> [17] The relationship between lawyer and client is a fiduciary one in which the lawyer occupies the

16

highest position of trust and confidence. The relationship is almost always unequal; thus, a sexual relationship between lawyer and client can involve unfair exploitation of the lawyer's fiduciary role, in violation of the lawyer's basic ethical obligation not to use the trust of the client to the client's disadvantage. . . . [T]his Rule prohibits the lawyer from having sexual relations with a client regardless of whether the relationship is consensual and regardless of the absence of prejudice to the client.

¶37 We have very recently reiterated these same principles, making it exceedingly clear that attorneys who engage in sexual misconduct do so at their professional peril:

We have traveled a far way from tolerance of sexual misconduct in the workplace and in our profession. We recognize the psychological damage that can be inflicted on the victims of sexual abuse, who silently suffer and do not complain because they feel powerless to do so. The sexual abuse of a client is unacceptable in any profession and in any business setting, and cannot be tolerated in our profession, which holds as sacred the dignity of the individual.

. . . Attorneys who commit sexual crimes against their clients take from their victims something more profound than money or goods; they take from their victims their dignity and psychological well-being. Such conduct is grossly incompatible with the standards of professionalism expected of attorneys.

In re Disciplinary Proceedings Against Hanes, 2020 WI 89, ¶31, 394 Wis. 2d 585, 951 N.W.2d 426 (quoting In Re Gallo, 178 N.J. 115 (2003).

¶38 These principles are reflected and reinforced by the lengthy suspensions imposed in recent years on attorneys who engaged in sexual misconduct with either clients or non-clients. For example:

17

- In <u>In re Disciplinary Proceedings Against Voss</u>, 2011 WI 2, 331 Wis. 2d 1, 795 N.W.2d 415, we suspended an attorney for a period of four years, eight months, based on the attorney's sexual relationship with a client who had a history of mental illness and alcohol abuse, and the attorney's subsequent attempts to intimidate and discredit the client and her family. The attorney had one public reprimand on his disciplinary record. We criticized the respondent-attorney for "repeatedly [taking] advantage of his position of power and victimiz[ing] a very vulnerable person for his own selfish motives," and we warned that the "egregious nature of [his] conduct caused us to give serious consideration to the sanction of revocation." <u>Id.</u>, ¶39.

- In <u>In re Disciplinary Proceedings Against Evenson</u>, 2015 WI 38, 361 Wis. 2d 629, 861 N.W.2d 786, we imposed a 30-month suspension on an attorney based on criminal conduct with a non-client that resulted in two misdemeanor convictions for fourth-degree sexual assault and one felony count of delivery of a controlled substance. The attorney, who already had a public reprimand on his disciplinary record, engaged in two acts of sexual intercourse with an obviously intoxicated woman after providing her with ecstasy and alcohol.

18

- In In re Disciplinary Proceedings Against Baratki, 2017 WI 89, 378 Wis. 2d 1, 902 N.W.2d 250, we imposed a six-month suspension on an attorney who, among other things, made sexual comments to a client and on one occasion lifted her shirt and kissed her abdominal area. The attorney had been privately reprimanded twice before and, in the case at hand, had also failed to act with reasonable diligence and failed to cooperate with the disciplinary investigation, among other things. We chastised the lawyer for his "efforts to leverage his position of trust for personal gratification," and we quoted with approval a previous case in which we described an attorney's sexual misconduct with a client as "'egregious'" behavior that "'perverts the very essence of the lawyer-client relationship.'" Id., ¶32 (citation omitted).

- In In re Disciplinary Proceedings Against Hanes, 2020 WI 89, 394 Wis. 2d 585, 951 N.W.2d 426, we imposed a four-year suspension on an attorney based on criminal conduct with a non-client that resulted in a misdemeanor criminal conviction for fourth-degree sexual assault and three felony criminal convictions for second-degree recklessly endangering safety, fleeing/eluding an officer, and bail jumping. The attorney, who had no disciplinary history, twice sexually assaulted a woman (first while she was asleep

19

and later when she awoke), and later engaged in a high-speed car chase with police while released on bail in his sexual assault case. We warned that "severe sanctions are appropriate when attorneys engage in predatory sexual misconduct against a vulnerable individual." Id., ¶29.

¶39 The disconnect between the above-cited authorities and Attorney Ritland's and the referee's recommendations——calling for a public reprimand or a three-month suspension——gives us pause. Both are wholly inadequate given the seriousness with which we view acts of attorney sexual misconduct and the egregious nature of Attorney Ritland's behavior, which included, in the referee's words, "preying on vulnerable people" with financial or substance abuse problems. At the risk of redundancy, we emphasize that sexual misconduct by attorneys, whether with clients or non-clients, is not taken lightly.

¶40 Even giving Attorney Ritland credit for his otherwise clean disciplinary history and his consistent engagement in community service, we conclude that a lengthy, two-year suspension appears necessary to impress upon him the seriousness of his professional misconduct, particularly in light of the referee's observation——which we have no reason to doubt——that Attorney Ritland "has not shown any remorse or even recognition of how wrong his behavior is." Importantly, too, a two-year suspension will require Attorney Ritland to successfully complete the formal reinstatement procedure set forth in SCRs 22.29 through 22.33.

20

¶41 We turn next to the issue of costs. They are considerable: $21,017.24 as of March 2, 2020. We impose them fully on Attorney Ritland, in part because he has not stated an objection to them, and in part because his litigation approach no doubt helped drive them.

¶42 Attorney Ritland fought tooth and nail to avoid discipline, deploying sometimes questionable litigation tactics. As just one example, even though the misconduct charge against him was founded on his sexual misbehavior, he refused to answer any of the OLR's deposition questions on this topic, claiming they were irrelevant. The OLR was forced to file a motion to compel, and after a hearing, the referee ordered Attorney Ritland to appear for a second deposition and answer the OLR's questions, which he ultimately did. We note, too, the referee's observation in his report that "[d]uring this proceeding [Attorney Ritland] appeared to be disingenuous when he claimed to not remember matters of importance to him personally." The referee additionally pointed out in his report that Attorney Ritland attempted to disavow at the disciplinary hearing a concession he made in his own letter to the referee, in which he wrote that "I certainly violated the law; I would not attempt to minimize that." At the disciplinary hearing, Attorney Ritland pivoted away from this statement, claiming he "didn't draft" the letter, but rather "a friend" had, and "I thought I edited that [statement] out, but I guess not." These examples are not exhaustive but illustrate the type of recalcitrant litigation

21

tactics that Attorney Ritland has engaged in during this disciplinary matter.

¶43 Attorney Ritland had every right to vigorously contest the misconduct charge against him. But SCR 22.24(1m) makes clear that when a lawyer ultimately found guilty of misconduct imposes costs on the disciplinary system, he or she must expect to pay them. Throughout this case, Attorney Ritland has proven to be a difficult litigant, prone to obstinate conduct and obfuscation. Such litigation practices come at a cost; Attorney Ritland will pay it in full.

¶44 IT IS ORDERED that the license of James C. Ritland to practice law in Wisconsin is suspended for a period of two years, effective June 3, 2021.

¶45 IT IS FURTHER ORDERED that James C. Ritland shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶46 IT IS FURTHER ORDERED that within 60 days of the date of this order, James C. Ritland shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $21,017.24 as of March 2, 2020.

¶47 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.29(4)(c).

¶48 PATIENCE DRAKE ROGGENSACK, C.J. *(dissenting).* I dissent because the discipline imposed for sexual misconduct is not consistent with our past disciplinary decisions for lawyers who had no prior misconduct of any type.

¶49 I am authorized to state that Justices ANNETTE KINGSLAND ZIEGLER and REBECCA GRASSL BRADLEY join this dissent.