# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP1616-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Nathan E. DeLadurantey, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>        Complainant-Appellant,<br>    v.<br>Nathan E. DeLadurantey,<br>        Respondent-Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST DELADURANTEY

| | |
|---|---|
| OPINION FILED: | March 3, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |

Per curiam. ANN WALSH BRADLEY, J., filed a concurring opinion.
NOT PARTICIPATING:

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP1616-D

STATE OF WISCONSIN          :         IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Nathan E. DeLadurantey, Attorney at Law:**

**Office of Lawyer Regulation,**

       **Complainant-Appellant,**

    **v.**

**Nathan E. DeLadurantey,**

       **Respondent-Respondent.**

**FILED**

**MAR 3, 2023**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney publicly reprimanded.*

¶1 PER CURIAM. The Office of Lawyer Regulation (OLR) appeals Referee Robert E. Kinney's report, as amended, recommending that the court dismiss the remaining charges in the disciplinary complaint filed against Attorney Nathan E. DeLadurantey alleging that Attorney DeLadurantey violated the Attorney's Oath in Supreme Court Rule (SCR) 40.15,[1] which is

---

[1] SCR 40.15 (Attorney's Oath) provides in relevant part: "I will abstain from all offensive personality . . . ."

enforced via SCR 20:8.4(g),[2] by failing to abstain from "offensive personality."

¶2 This court issued an initial opinion in this case on July 8, 2022. As explained below, because we were unaware of the referee's submission of errata pages for his report that eliminated much of the legal basis for our initial opinion, we withdrew that opinion by order dated July 12, 2022. The discovery of those errata pages caused us to further review the basis upon which the parties had requested the referee to accept Attorney DeLadurantey's no-contest plea and upon which the referee had made factual findings in his report. Having asked for and received responses from the parties regarding their agreement as the factual basis for the plea, and having reconsidered the record in this matter, we now issue this revised opinion. We conclude that Attorney DeLadurantey did engage in "offensive personality" in one incident that he admits, and we determine that the appropriate discipline for that misconduct is a public reprimand. We also determine that Attorney DeLadurantey should be required to pay costs of this disciplinary proceeding in the amount of $17,570.10.

¶3 In order to review the legal conclusion in the referee's amended report, we first need to clarify the procedural context in which this case comes to us on appeal because that informs what we are reviewing and how we can

_____

[2] SCR 20:8.4(g) provides: "It is professional misconduct for a lawyer to violate the attorney's oath."

proceed. This further requires us to provide some background on the use of no-contest pleas in attorney disciplinary cases, and the procedural history of the proceedings before the referee in this case.

¶4 Supreme Court Rule 22.14(2)[3] contemplates that in a respondent attorney's answer to a complaint filed by the OLR, the attorney may "plead no contest to allegations of misconduct in the complaint." Although this rule speaks only in terms of pleading no contest in the respondent's answer, we have regularly upheld the entry of a no-contest plea entered at any stage of the proceedings before the referee, even if the respondent attorney's answer initially denied some or all of the complaint's factual allegations and claims of misconduct. See, e.g., In re Disciplinary Proceedings Against Hammis, 2019 WI 55, 386 Wis. 2d 719, 927 N.W.2d 525 (no-contest pleas entered pursuant to stipulation after respondent attorney filed answers to original and amended complaints); In re Disciplinary Proceedings Against Hudec, 2019 WI 39, 386 Wis. 2d 371, 925 N.W.2d 540 (no-contest pleas entered pursuant to stipulation after respondent attorney filed unsuccessful motion to dismiss and an answer that denied all allegations of misconduct); In re

---

[3] SCR 22.14(2) provides: "The respondent may by answer plead no contest to allegations of misconduct in the complaint. The referee shall make a determination of misconduct in respect to each allegation to which no contest is pleaded and for which the referee finds an adequate basis in the record. In a subsequent disciplinary or reinstatement proceeding, it shall be conclusively presumed that the respondent engaged in the misconduct determined on the basis of a no contest plea."

Disciplinary Proceedings Against Heins, 2017 WI 93, 378 Wis. 2d 27, 902 N.W.2d 257 (referee construed stipulation entered after completion of discovery and just prior to final evidentiary hearing to be entry of no-contest pleas to all counts in complaint).

¶5 In the criminal context, a circuit court has discretion whether to accept a plea, be it a guilty plea or a no-contest plea. State v. Martin, 162 Wis. 2d 883, 904, 470 N.W.2d 900 (1991) (". . . a court has discretion whether or not to officially receive or accept [guilty or no-contest] pleas . . ."); State v. Erickson, 53 Wis. 2d 474, 476, 192 N.W.2d 872 (1972) ("The trial court earlier rejected a plea of nolo contendere [i.e., no contest], but it was within its discretion to do just that."); State v. La Pean, 247 Wis. 302, 308, 19 N.W.2d 289 (1945) ("The right of the court to refuse to accept a plea is an inherent power of all criminal courts."); Brozosky v. State, 197 Wis. 446, 222 N.W.2d 311, 313 (1928) (a plea of nolo contendere "is received at the discretion of the court"). Although an attorney disciplinary proceeding is a civil action, rather than a criminal case, we see no reason why this rule would not also apply to a referee in an attorney disciplinary proceeding. First, referees in such matters generally have the powers of a circuit court judge trying a civil action. Moreover, our rules both explicitly authorize the entry of no-contest pleas in attorney disciplinary proceedings and use language that tracks the rules for accepting pleas in criminal cases. See SCR 22.16(1) ("The referee has the powers of a judge

4

trying a civil action . . . ."); SCR 22.14(2) (authorizing entry of no-contest pleas and providing requirements for accepting such pleas). Thus, it is logical to interpret the plea entry rule in disciplinary proceedings to give the referee the same discretion in deciding whether to accept a plea that a circuit court possesses in a criminal case.

¶6 Rule 22.14(2) states that when a no-contest plea is included in the answer (or offered later in the proceeding), the referee "shall make a determination of misconduct in respect to each allegation to which no contest is pleaded," but only if "the referee finds an adequate factual basis in the record" to support the plea. Id. This tracks the language in the statute that governs the entry of pleas in criminal cases, Wis. Stat. § 971.08(1)(b), which requires a circuit court, before accepting a guilty or no-contest plea, to "[m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged."

¶7 We have said in the criminal context that how a plea-taking judge makes that inquiry and what the judge uses in the record as the factual basis is left to the judge's discretion. See, e.g., State v. Thomas, 2000 WI 13, ¶¶19-22, 232 Wis. 2d 714, 605 N.W.2d 836. However the plea-taking judge makes the inquiry and whatever portion of the record the judge ultimately relies on, the judge must satisfy the two purposes of the factual basis requirement: (1) that the defendant is aware of the elements of the crime, and (2) that the defendant's conduct, as established by the record, meets those elements. Id., ¶22.

5

Moreover, the plea-taking judge "must ensure that a defendant realizes that his or her conduct does meet the elements of the crime charged." Id., ¶21 (citing McCarthy v. United States, 394 U.S. 459, 467 (1969)). We see no reason why those statements of the law of pleas in the criminal context would not apply to the requirement to find a "factual basis" for a no-contest plea in an attorney disciplinary proceeding. The use of similar language in the disciplinary rule regarding the need to establish a "factual basis" for a no-contest plea by an attorney supports this conclusion.

¶8 With this background in mind, we now turn to the facts of this case. Attorney DeLadurantey was admitted to practice law in Wisconsin in 2007. Since 2008, he has been the owner of DeLadurantey Law Office, LLC in Brookfield. Since 2013, the primary focus of Attorney DeLadurantey's law firm has been consumer litigation. Attorney DeLadurantey has not previously been disciplined.

¶9 The OLR's complaint in this proceeding focused on the relationship between Attorney DeLadurantey and H.M., the grievant, during the time period that H.M. worked as an associate attorney for Attorney DeLadurantey's law firm. Attorney DeLadurantey and H.M. graduated from the same law school and met at an alumni function. Attorney DeLadurantey subsequently hired H.M., and her employment with his law firm extended from February 2012 until October 2017.

¶10 The OLR's complaint alleged that the law firm's growing consumer litigation practice required H.M. and Attorney

6

DeLadurantey to work evenings and weekends, and to often travel together for interviews, depositions, and court proceedings. The complaint further alleged that over the course of H.M.'s employment, Attorney DeLadurantey and H.M. "established a friendship outside the office, including going to a gym to work out, playing online games, sharing meals together when working, and participating in social activities while traveling for Firm business such as snorkeling, going to the beach, and watching Netflix." The complaint alleged, however, that during this time period Attorney DeLadurantey had "engaged in a pattern of behavior that was inappropriate and at times constituted sexual harassment." The OLR's complaint proceeded to allege a number of incidents and statements that were a part of the alleged pattern of inappropriate and harassing behavior. The complaint alleged multiple violations of two ethical rules arising from "each instance" of subjecting H.M. to physical contact, sexual advances, and comments regarding her physical appearance: (1) violations of SCR 20:8.4(i) (harassment),[4] and (2) violations of the "offensive personality" clause in the Attorney's Oath in SCR 40.15. In other words, the complaint alleged that each instance of such conduct summarized in the complaint had violated both of those ethical rules. Consequently, although the OLR's complaint listed only a single count and the parties and the referee have

---

[4] SCR 20:8.4(i) provides: "It is professional misconduct for a lawyer to harass a person on the basis of sex, race, age, creed, religion, color, national origin, disability, sexual preference or marital status in connection with the lawyer's professional activities."

7

often spoken of a single charge under each ethical rule in this case, the OLR's complaint actually alleged multiple counts of misconduct under each of two separate rules. We will therefore refer to "charges" in the plural for each rule.

¶11 Attorney DeLadurantey's answer to the complaint admitted that the two attorneys had worked together on evenings and weekends and had often traveled together. His answer denied that he had engaged in harassment prohibited by SCR 20:8.4(i) and that he had violated the "offensive personality" clause of the Attorney's Oath. With the exception of what we will reference as the "San Francisco incident," which we will describe in detail below, Attorney DeLadurantey's answer and subsequent deposition testimony denied at least some portion of the allegations surrounding each of the various incidents or comments described in the complaint. Given the nature of the proceedings for the taking of Attorney DeLadurantey's no-contest plea and his denial of many of the allegations of the complaint, we will not set forth in detail those other alleged incidents and comments. We will include in the factual recitation only facts that are uncontested.

¶12 It is undisputed that while H.M. was employed by Attorney DeLadurantey's law firm, Attorney DeLadurantey and H.M. traveled together on a number of business trips. On some of those trips, the two stayed in a two-bedroom, Airbnb accommodation, with each occupying their own bedroom. It is undisputed that one such trip occurred in February 2016, when the two attorneys traveled to San Francisco for depositions.

8

¶13 Five paragraphs of the OLR's complaint (¶¶17-21) addressed the San Francisco incident. Attorney DeLadurantey's answer admitted some portions of those paragraphs, but denied some portions. In his deposition testimony, however, he clarified that he had only vague and generalized recollections of the events of that evening because he had been highly intoxicated. He therefore essentially indicated that he could not dispute the allegations of the complaint about the San Francisco incident, which had been based on H.M.'s statements to the OLR. Also, in the statement of facts in Attorney DeLadurantey's appellate brief, he says that he conceded before the referee at the plea hearing that "his conduct relating to the San Francisco incident referred to in the complaint constituted offensive personality." His brief then quoted the five paragraphs of the complaint addressing the San Francisco incident in his statement of facts, indicating that he does not dispute those factual allegations for purposes of this case, although he also included an extended excerpt from his deposition setting forth his limited recollection of the events of that evening. Consequently, we use the allegations of paragraphs 17-21 of the complaint to describe the events of the San Francisco incident.

¶14 On the evening of February 3, 2016, H.M. was in a common space watching television. Attorney DeLadurantey approached her and began to rub her back, arms, and legs in a suggestive manner. H.M. left the common area and went to her

9

bedroom. H.M. was upset and afraid, to the extent that she felt physically ill.

¶15 Attorney DeLadurantey subsequently texted H.M. and attempted to explain his inappropriate behavior. In the ensuing text exchange between the two, Attorney DeLadurantey asked if he could "try and fix the awkwardness." H.M. responded, "I'm pretty sure I'm going to throw up shortly – I'm struggling not to."

¶16 Later in the evening, H.M. and Attorney DeLadurantey had a face-to-face conversation in the kitchen of the rental unit. Despite H.M.'s earlier expression of being upset due to Attorney DeLadurantey's suggestive conduct, during the conversation Attorney DeLadurantey told H.M. that he wanted to "take her upstairs to her bedroom and hold her." H.M. told Attorney DeLadurantey that would not happen. She also told him during the conversation that she may have to leave Attorney DeLadurantey's law firm.

¶17 At the end of the conversation, Attorney DeLadurantey left the kitchen, went upstairs, and got into the bed in H.M.'s bedroom. When she discovered Attorney DeLadurantey in her bed, H.M. told him that she was not going to share a bed with him. He then left the bedroom.

¶18 The next morning, Attorney DeLadurantey admitted to H.M. that his actions the prior evening had been inappropriate, and he apologized for them.

¶19 Although we will not comment on specific alleged incidents, it is undisputed that the working relationship

between H.M. and Attorney DeLadurantey subsequently deteriorated and that H.M. left Attorney DeLadurantey's law firm in October 2017.

¶20 As noted above, Attorney DeLadurantey denied many of the allegations in the OLR's complaint about other incidents, at least in part.  He continued to deny those allegations in his deposition testimony.

¶21 The parties appeared before the referee for the evidentiary hearing in this matter on May 17, 2021.  The referee noted that there were a number of pending motions in limine that needed to be resolved.[5]  Before doing so, however, the referee met with the attorneys representing the OLR and Attorney DeLadurantey.  The result of that off-the-record discussion was an apparent agreement that the OLR would dismiss the charges[6] of harassment on the basis of sex under SCR 20:8.4(i) and that Attorney DeLadurantey would plead no-contest to the charges[7] of engaging in offensive personality under SCR 40.15 and 20:8.4(g),

---

[5] The referee noted that he had received and read copies of the parties' voluminous trial exhibits, except for the deposition transcripts of Attorney DeLadurantey and H.M., which counsel for the parties had asked him not to read in advance of the evidentiary hearing.

[6] As noted above, the OLR's complaint alleged that "each instance" of physical contact, sexual advance, or comment about H.M's appearance constituted a separate violation of SCR 20:8.4(i).

[7] The OLR's complaint also alleged that "each instance" of physical contact, sexual advance, or comment about H.M's appearance constituted a violation of the offensive personality clause of the Attorney's Oath and therefore of SCR 20:8.4(g).

11

with the parties jointly requesting the imposition of a private reprimand.

¶22 Unfortunately, neither the attorneys nor the referee specified on the hearing transcript precisely what facts the referee was to use as the factual basis for Attorney DeLadurantey's plea. It is not even clear whether they fully understood precisely what was within the scope of their agreement. Counsel for the OLR initially said that Attorney DeLadurantey's no-contest plea would be "supported by the allegations of the complaint." In response, however, counsel for Attorney DeLadurantey responded that while he did not have an objection to the description of the agreement described by OLR's counsel, he said that there were "other provisions of the agreement" that should also be placed onto the record, indicating that the OLR's counsel had not described the full agreement of the parties. Specifically, Attorney DeLadurantey's counsel stated that the referee should consider the record in the case as a whole, which would include the proposed hearing exhibits and the deposition transcripts of Attorney DeLadurantey and H.M.[8] OLR's counsel did not dispute this clarification. This meant that the parties asked the referee to rely not only on the factual allegations of the complaint, but also on a

---

[8] Actually, Attorney DeLadurantey's proposed hearing exhibits included the transcript of an interview that H.M. gave to an OLR investigator that was not under oath. Attorney DeLadurantey's counsel asked that the transcript of H.M.'s deposition be substituted for that interview transcript. There was no objection by OLR's counsel to this substitution.

12

record that contained express denials of allegations in the complaint and competing affirmative assertions of fact.

¶23 The referee then initiated a plea colloquy with Attorney DeLadurantey. As part of that colloquy, the referee noted that, in order to accept Attorney DeLadurantey's no-contest plea, he was required to find an adequate factual basis for the plea and he clearly indicated that he found such an adequate factual basis in the record as a whole, not just in the allegations of the complaint:

> The rule that I alluded to a minute ago requires that I find that there is "adequate factual basis" in the record, unquote, to support your plea. And I want to make sure that it's clear that I have reviewed hundreds of pages of discovery materials, and I have no difficulty finding that there is an adequate factual basis to support the plea of no contest to that charge.

Having also found that the plea was knowing, intelligent, and voluntary, the referee accepted the plea. The parties agreed to submit simultaneous legal memoranda in support of their sanction request.

¶24 After receiving the parties' sanction memoranda, the referee prepared his report and recommendation. Although he had accepted Attorney DeLadurantey's no-contest plea to the "offensive personality" charges at the plea hearing, he

13

concluded in his report that the "offensive personality" charges should be dismissed.[9]

¶25 The referee's conclusion of no "offensive personality" violations stemmed from his subordinate legal conclusion that in order to engage in "offensive personality" in the context of allegations of sexual conduct, the OLR was required to prove at least one element of a sexual harassment employment discrimination claim—that Attorney DeLadurantey's sexual advances to H.M. and alleged comments about her appearance were "unwelcome," which the referee characterized as the "gravamen" of any sexual harassment claim. See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 68 (1986).

¶26 In his report, the referee did not consider just the allegations of the OLR's complaint. Consistent with the parties' agreement expressed at the plea hearing, he reviewed the totality of the record, including photographs of the two attorneys together, communications between them, and their testimony about their various interactions, which he discussed in a section of his report entitled "Additional Facts." From some of that record evidence, which he believed to be not in dispute, the referee found that the two attorneys had a platonic personal relationship as well as a professional one. From his findings about their personal relationship, the referee further

---

[9] Alternatively, the referee stated that if the court disagreed with his conclusion and found a violation of the Attorney's Oath, he recommended that the court impose a private reprimand and that the case file should be sealed "for the benefit of both parties."

14

found that the OLR would have been unlikely to have proven that Attorney DeLadurantey's conduct during the San Francisco incident or in the other instances alleged in the complaint was objectively "unwelcome," as that term is used in sexual harassment law. Since he concluded that a reasonable person in Attorney DeLadurantey's position would not have known that his conduct was "unwelcome," the referee further concluded that the same conduct could not be "offensive" under the Attorney's Oath. Thus, he determined that the remaining "offensive personality" charges should be dismissed.

¶27 The OLR appealed from the referee's report and recommendation. In the Statement of Facts portion of the OLR's appellate brief, it did not cite to the complaint as the source of its factual statements. It did, however, repeatedly cite to Attorney DeLadurantey's and H.M.'s deposition transcripts as support for its factual assertions.[10] Indeed, in at least one instance, the OLR's brief described an incident as Attorney DeLadurantey had done in his deposition, rather than as the OLR had alleged in its complaint, indicating its belief that the entire record, not just the complaint, was to be considered in reviewing the referee's report.

¶28 The heading for the first argument in the OLR's appellate brief was that "**[t]he record** supports by clear,

---

[10] In the factual section of the brief, which occupied roughly five pages, the OLR cited Attorney DeLadurantey's deposition transcript 16 times and it cited H.M.'s deposition transcript four times. It cited the complaint zero times. It followed this same pattern in the argument section of its brief.

satisfactory and convincing evidence that [Attorney] DeLadurantey engaged in offensive personality and violated the Attorney's Oath." OLR Brief at 12 (emphasis added). In that section the OLR essentially urged the court to find or rely on a sizable number of "facts" from the record that the referee had not found in his report, but which the OLR contended support a conclusion that Attorney DeLadurantey engaged in multiple acts of "offensive personality."

¶29 The OLR also argued in its brief that the referee had made an error of law in concluding that the ethical rule against sexual harassment is violated only by proving a violation of federal employment law against sexual harassment in the workplace. Similarly, the OLR argued that the referee legally erred in concluding that because H.M. had occasionally requested non-sexual physical contact (shoulder rubs), Attorney DeLadurantey's request for more intimate and sexual contact during the San Francisco incident was not "unwelcome" under both federal law and Wisconsin's ethical rules.

¶30 As noted above, Attorney DeLadurantey's response brief indicated, at least implicitly, that his agreement to plead no-contest was primarily based on the allegations of the portion of the complaint relating to the San Francisco incident. He argued, however, that his no-contest plea did not prevent the referee from making a recommendation to dismiss the offensive personality charges that was based on the referee's review of the record as a whole. Moreover, he further asserted that the referee's recommended dismissal of the remaining "offensive

16

personality" charges was based on the referee's factual findings from the record which were not clearly erroneous.

¶31 Our initial opinion in this matter focused on what appeared to be a clear contradiction in the referee's report. Although the ultimate conclusion and recommendation of the report was that the evidence did not support a determination that Attorney DeLadurantey had engaged in "offensive personality," the second page of the report, as initially filed, contained a Finding of Fact #3 that the complaint did contain an adequate factual basis for Attorney DeLadurantey's no-contest plea to the charges of "offensive personality." That page also contained a single "conclusion of law" that Attorney DeLadurantey "did engage in the misconduct charged, specifically, he did not abstain from all offensive personality" (emphasis added). This factual finding and this legal conclusion appeared to conflict with the report's subsequent "additional facts," legal analysis, and recommendation that the "offensive personality" charges should be dismissed. We adopted the initial Finding of Fact #3 and accepted the initial conclusion of law in the referee's report, treating the referee's report as having confirmed the acceptance of Attorney DeLadurantey's no-contest plea and affirming the referee's initial determination at the plea hearing that there was a sufficient factual basis in the complaint as a whole for Attorney DeLadurantey's no-contest plea. We essentially concluded that the remainder of the referee's report was factually and legally faulty, and we therefore disregarded it.

17

¶32 When we issued the initial opinion, however, we were not aware of the fact that the referee had submitted errata pages for his report, which had deleted both Finding of Fact #3 and the legal conclusion on page two of the report.[11] In the cover letter accompanying the errata pages, the referee explained that after writing the first few pages of his report, including Finding of Fact #3 and the initial legal conclusion on page two, he had engaged in further review and research, which had led him to conclude ultimately that Attorney DeLadurantey had not engaged in "offensive personality." This explanation clarified that, although the referee had initially accepted Attorney DeLadurantey's no-contest plea, he had ultimately rejected the no-contest plea in his final report because he had concluded that the facts in the record as a whole showed that Attorney DeLadurantey's actions toward H.M. were not "unwelcome," as that term is used in employment sexual harassment statutes and case law.

¶33 The referee's deletion of Finding of Fact #3 and the initial legal conclusion on page two of his report eliminated the basis for our initial opinion, which implicitly upheld Attorney DeLadurantey's no-contest plea. Our further review of the plea hearing transcript, the referee's report, and the

---

[11] The referee's cover letter accompanying the errata pages directed that the attached errata pages be substituted for pages two, six, and 22 of the referee's report. The clerk's office, however, did not substitute those pages as requested by the referee. It simply filed the referee's submission as a letter, leaving the report unchanged.

18

parties' appellate briefs demonstrated that there was confusion among the referee and the parties as to what the parties had agreed should be the factual basis for the no-contest plea and therefore what should be the factual basis for this court's opinion.

¶34 The changes to the referee's report in the errata raised a number of questions. If the referee determined that he needed to withdraw his interlocutory acceptance of Attorney DeLadurantey's no-contest plea, on what basis did he make factual findings in his report, since there was no evidentiary hearing at which he could weigh the credibility of witnesses? Did the parties agree that the allegations of the entire complaint (and only those allegations) could serve as the factual basis for the plea? Did they agree, as Attorney DeLadurantey's appellate brief implies, that only the five paragraphs of the complaint regarding the San Francisco incident constituted the factual basis for his plea? Alternatively, did they agree that both the allegations of the complaint and the record as a whole should be used by the referee as the factual basis for Attorney DeLadurantey's no-contest plea? If the last of those scenarios was accurate, what was the effect of the fact that parts of the record (e.g., Attorney DeLadurantey's answer and his deposition testimony) disputed many of the allegations of the complaint, at least in part, and the fact that Attorney DeLadurantey never withdrew his denials?

¶35 Given these questions, we ordered the parties to submit supplemental legal memoranda addressing the issue of what

19

they had agreed should serve as the factual basis for the no-contest plea, as well as the issue of whether the matter should be remanded to the referee for further proceedings. The OLR's supplemental memorandum initially claimed that only the complaint had served as the factual basis for the no-contest plea, but it subsequently acknowledged that the referee had been asked at the plea hearing to review the record as a whole. Attorney DeLadurantey's supplemental memorandum indicated that he had agreed that the five paragraphs of the complaint relating to the San Francisco incident, which he acknowledged he could not materially dispute in his deposition testimony, could be used as the factual basis for the plea, along with the record as a whole. Both parties urged this court not to remand the matter to the referee for further proceedings, given the additional time and expense that would result.

¶36 Ordinarily, when we review a referee's report that is prepared following the entry of a comprehensive stipulation of facts or following a full evidentiary hearing, we affirm a referee's factual findings unless they are clearly erroneous, and we review a referee's legal conclusions on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. If we conclude that the attorney has engaged in professional misconduct, we then determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary

20

Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶37 In this case, however, there was no comprehensive stipulation of facts or an evidentiary hearing at which the referee could weigh credibility. There was a no-contest plea. If the referee had continued to accept that plea and had submitted a report based on that plea, we would review whether the referee had properly exercised his discretion in accepting the plea. Cf. State v. Schmidt, 2021 WI 65, ¶12, 397 Wis. 2d 758, 960 N.W.2d 888 (circuit court's denial of a motion to withdraw a plea in a criminal case is reviewed under an erroneous exercise of discretion standard); White v. State, 85 Wis. 2d 485, 491, 271 N.W.2d 97 (1978) (same).[12]

¶38 In this case, however, it is clear from the referee's report, as amended, that he reconsidered his acceptance of Attorney DeLadurantey's no-contest plea and ultimately refused to accept that plea because he concluded that the

---

[12] The usual procedural path of pleas in criminal cases is different from the path in attorney disciplinary cases. In most instances, there is no appellate review of the circuit court's acceptance of a guilty or no-contest plea. What is reviewed normally on appeal is a circuit court's denial of a defendant's request to withdraw a plea. In the attorney disciplinary context, however, this court reviews every case in which a plea is entered, whether or not the respondent attorney subsequently sought to withdraw the plea or appealed from the referee's report following the acceptance of the plea. Thus, when the respondent attorney does not seek plea withdrawal and the referee's report confirms the acceptance of the plea, we review the acceptance of the plea for an erroneous exercise of discretion.

"uncontroverted" facts he found from the record as a whole demonstrated that Attorney DeLadurantey's conduct did not constitute "offensive personality" in violation of the Attorney's Oath and SCR 20:8.4(g) because his conduct was not objectively "unwelcome." His ultimate report is therefore more in the nature of a report in a case where no plea is entered, and we will utilize the standards of review for such cases, as summarized above.

¶39 There are two primary problems with the referee's report, which preclude us from accepting the referee's findings or legal conclusions.

¶40 First, the case was presented to the referee as being resolved through a no-contest plea. The referee initially followed the proper procedure for the entry of that plea and exercised his discretion to accept it. He then reconsidered the entry of the plea and determined that it should not be accepted. This is permissible in an attorney disciplinary proceeding. Referees in attorney disciplinary proceedings generally have the powers of a judge trying a civil action. SCR 22.16(1). This would include the ability to reconsider an interlocutory decision, such as in this case accepting a no-contest plea to a charge of misconduct, and then, after further consideration, reaching the opposite conclusion in a subsequent report. Although it is unusual, this is not the first time it has happened. See In re Disciplinary Proceedings Against Clark, 2016 WI 36, 368 Wis. 2d 409, 878 N.W.2d 662 (following attorney's entry of a no-contest plea to a charge in a

22

disciplinary complaint, the referee concluded that the OLR had failed to meet its burden of proof with respect to that charge).

¶41 What we do find troubling is that, once the referee determined that the no-contest plea should not be accepted, he proceeded to make findings of fact that served as the basis for his ultimate legal conclusion of no "offensive personality" violations. As an initial matter, it is clear from the record of this case, both before the referee and on appeal, that the parties and the referee were not on the same page as to precisely what was the universe of facts that should serve as the factual basis for the plea. That would have been problematic even if the referee had continued to accept the plea.[13]

---

[13] This case is a cautionary tale for referees and lawyers who appear in attorney disciplinary proceedings. When a respondent attorney decides to enter a no-contest plea, the lawyers and the referee need to be clear regarding what universe of facts will serve as the factual basis for the plea, especially when the record contains disputes as to the underlying events or the context of those events. Moreover, one cannot agree to have one set of facts (e.g., the allegations of the complaint) serve as the factual basis for a no-contest plea and then ask the referee to consider a broader set of conflicting factual assertions (e.g., the record as a whole) in making a recommendation as to the appropriate level of discipline. In the context of a no-contest plea, a referee cannot make factual findings from disputed record evidence to support a discipline recommendation without a hearing at which the referee can assess witness credibility, especially when those factual findings conflict with the facts used to support the plea. Finally, both referees and practicing lawyers need to understand that clarity as to the facts relied on by referee to accept a no-contest plea is necessary to permit this court to review the referee's acceptance of the plea and to write a full opinion deciding the case.

23

¶42 Once the referee rejected the plea, however, there was no express stipulation of the parties as to any facts.  The case at that point reverted to the status of any other case prior to an evidentiary hearing.  There was a complaint containing many factual allegations, and there was an answer that disputed many of those factual allegations.  There were also deposition transcripts for H.M. and Attorney DeLadurantey, but both of those consisted of out-of-court declarations that the referee had not observed in order to make credibility determinations.  Moreover, the deposition testimony of both of those witnesses was certainly not the full testimony that those witnesses would have presented at an evidentiary hearing.  H.M. and Attorney DeLadurantey answered only those questions that were asked by opposing counsel, and those questions did not cover every aspect of the various incidents alleged in the complaint.  Moreover, even with respect to the documentary exhibits that the parties submitted and asked the referee to review, H.M. and Attorney DeLadurantey were not given the opportunity to explain their contents or put them in context.  This case was not about the language of a contract or an insurance policy or a deed, which could be interpreted on its face by a referee or by this court on review; it involved various interactions between two people, some of which were captured in paper form (e.g., printouts of text messages), but many of which depended on the testimony of H.M. and Attorney DeLadurantey, as well as any other third party who might have witnessed their interactions.

24

¶43 In this situation, we cannot see how the referee could make the large number of factual findings that he did about various aspects of the relationship between Attorney DeLadurantey and H.M. Once there was no longer an accepted no-contest plea to resolve the case, the referee should have proceeded either to obtain a comprehensive stipulation of facts from the parties or to conduct an evidentiary hearing, at which he could observe the demeanor of the witnesses and make credibility determinations. At that point, he could then have made factual findings based either on the stipulation or on the testimony and exhibits presented at the hearing.

¶44 While the referee stated that he was making only factual findings that were "uncontroverted," it is clear that there were still many disputes of fact about a wide range of incidents. The OLR's appellate brief included a statement of facts that was very different from the factual recitation in the referee's report. Given the presence of ongoing factual disputes and the lack of a basis for the referee to make factual findings in the absence of an opportunity to weigh the credibility of the witnesses, we cannot accept the referee's "additional" findings of fact in his report. The failure to follow the proper procedure for making findings of fact was an error of law, which invalidates those additional factual findings.

¶45 The second foundational problem with the referee's report is another error of law. Although the referee stated in his report that a charge of "offensive personality" is "neither

25

a watered-down version of sexual harassment nor a lesser included offense of it," it is clear that he conflated sexual harassment under SCR 20:8.4(i) and engaging in "offensive personality" under SCR 20:8.4(g). He began the discussion section of his report with an extended discussion of what constitutes sexual harassment under employment discrimination law, stated that the "gravamen" of a claim of sexual harassment is whether the conduct at issue was "unwelcome," and then reasoned that conduct that would not be considered "unwelcome" under sexual harassment law also cannot be "offensive" under the "offensive personality" clause of the Attorney's Oath. Indeed, he analyzed whether both Attorney DeLadurantey's sexual advances during the San Francisco incident and his alleged comments about H.M.'s appearance at other times were "unwelcome," concluding from what he believed to be the context of their personal, as well as professional, relationship that neither type of conduct was objectively unwelcome.

¶46 Although it is possible that the same conduct could constitute both harassment on the basis of sex and "offensive personality," they are separate ethical violations. The requirement to "abstain from all offensive personality" is one of a number of standards to which attorneys must conform when they enter the practice of law in this state. Such standards apply not only to the direct practice of law, but also to the business of law, and to the lawyer's conduct beyond the practice or business of law. See, e.g., SCR 20:4.1 (requiring a lawyer to avoid knowingly making a false statement of a material fact

26

or law to a third party when representing a client); SCR 20:4.4(a) (when representing a client, a lawyer may not use means that have no substantial purpose other than to embarrass, delay, or burden a third party); SCR 20:6.1 (every lawyer has a professional responsibility to provide legal services to those unable to pay); SCR 20:8.4(b) (lawyer has duty to avoid committing any criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer, whether or not the act occurs during the provision of legal services); SCR 20:8.4(c) (lawyer has duty to avoid engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Similarly, the duty to abstain from "offensive personality" can apply to conduct that occurs outside the direct practice of law. See In re Disciplinary Proceeding Against Johann, 216 Wis. 2d 118, 574 N.W.2d 218 (1998). This does not mean, however, that all personal conduct of a lawyer that is "offensive" violates the Attorney's Oath. The prohibition in SCR 20:8.4(g) against engaging in "offensive personality" applies to offensive conduct that reflects adversely on the lawyer's fitness to practice law. Id. at 122. When offensive conduct reflects adversely on a lawyer's fitness to practice law, this court, on behalf of the state, has a legitimate interest in prohibiting such actions and disciplining attorneys who engage in such conduct in order to protect the public and the administration of justice.

¶47 Contrary to the referee's conflation of the charges of "offensive personality" and employment discrimination through

27

sexual harassment, we have previously held that inappropriate language and conduct may constitute offensive personality in violation of the Attorney's Oath in a number of situations involving sexual conduct that did not constitute employment discrimination. See, e.g., In re Disciplinary Proceedings Against Beatse, 2006 WI 115, 297 Wis. 2d 292, 722 N.W.2d 385 (using state's email system to send and receive sexually explicit email messages and making inappropriate comments to a county employee who was not the attorney's subordinate in a work environment); In re Disciplinary Proceedings Against Bruckner, 161 Wis. 2d 385, 467 N.W.2d 780 (1991) (trading surreptitiously taken photographs of nude minors without their consent); see also In re Disciplinary Proceedings Against Heilprin, 168 Wis. 2d 1, 482 N.W.2d 908 (1992) (although the court indicated that repeatedly asking divorce clients explicit questions about their sexual behavior qualified as "offensive personality," it relied on the attorney's disobedience of a prior court order against such conduct as an alternative basis for finding such actions to be professional misconduct). Consequently, the referee's legal analysis that relied on the "welcomeness" element of employment sexual harassment claims was legally erroneous, which invalidates his legal conclusion of no "offensive personality" violation and his ultimate rejection of Attorney DeLadurantey's no-contest plea.

¶48 Having concluded that the referee made errors of law in ultimately rejecting Attorney DeLadurantey's no-contest plea, the question becomes what should the next step be in this case.

28

Ordinarily, because the decision to accept a no-contest plea is a discretionary one initially committed to a referee and there is a need for an evidentiary basis for the referee to make affirmative factual findings (as opposed to finding an adequate factual basis for a plea in an agreed-upon set of facts), we would remand the matter back to the referee for further proceedings—either a new plea based on a more specifically defined set of facts or a full evidentiary hearing.

¶49 In this unique instance, however, we choose not to do so. First, the parties have urged us not to remand the matter in light of the additional time and expense that would be involved. Second, there is a set of agreed-upon facts here that permit us to render a proper judgment. Sending the matter back to the referee for further proceedings would not change those particular facts and would not change the ultimate outcome in this proceeding. Thus, in this unique circumstance, it is proper for us to proceed at this time with rendering a final decision in this disciplinary proceeding.

¶50 Specifically, although we do not address the other incidents alleged in the complaint because there are still disputes as to some portion of those incidents in the record as a whole, Attorney DeLadurantey has admitted that he cannot contest the allegations of the complaint regarding the events of the San Francisco incident because his intoxication at the time has left him with no real memory of those events.

¶51 As summarized above, there is no dispute that while on a business trip, a senior lawyer and employer, while

intoxicated, made repeated sexual advances toward a subordinate attorney employee that were clearly and repeatedly rebuffed. Indeed, even after H.M. told Attorney DeLadurantey that his physical contact had made her physically ill and then had refused his request to go to her bedroom, Attorney DeLadurantey still went into H.M.'s bedroom and crawled into her bed, which can be interpreted only as a persistent demand for sexual activity despite H.M.'s refusal to consent. We have no hesitation in holding that such conduct constituted "offensive personality" that not only reflected adversely on Attorney DeLadurantey's professional judgment and fitness to be a member of the legal profession, but also reflected adversely on the reputation and integrity of the legal profession generally. Regardless of any personal relationship that had developed, H.M. was a subordinate attorney whose professional success and continued employment were, in large part, subject to Attorney DeLadurantey's control. This was not a matter solely of Attorney DeLadurantey's private affairs and personal morality. Consequently, Attorney DeLadurantey's offensive conduct in pressuring a subordinate employee to engage in unwanted sexual activity during the San Francisco incident constituted a clear violation of the Attorney's Oath and SCR 20:8.4(g).

¶52 We now turn to the question of the appropriate sanction for Attorney DeLadurantey's professional misconduct. We weigh the seriousness, nature, and extent of the misconduct; the level of discipline needed to protect the public; the need to impress upon the attorney the seriousness of the misconduct;

30

and the need to deter other attorneys from similar misconduct. In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, 269 Wis. 2d 43, 675 N.W.2d 747. Sources of guidance in determining appropriate sanctions are: prior case law; aggravating and mitigating factors; and the American Bar Association (ABA) Standards for Imposing Lawyer Sanctions. In re Disciplinary Proceedings Against Arthur, 2005 WI 40, 279 Wis. 2d 583, 694 N.W.2d 910.

¶53 Both Attorney DeLadurantey and the OLR have requested a private reprimand in this proceeding, and the referee agreed that a private reprimand would be the appropriate level of discipline if we reject his legal conclusion that the "offensive personality" charges should be dismissed. In prior cases, a lawyer's sexually offensive language and conduct has often received a private or public reprimand, unless it was coupled with other misconduct. See, e.g., Beatse, 297 Wis. 2d 292, ¶¶16-17 (public reprimand); Private Reprimand No. 1991-6 (consensual private reprimand imposed on lawyer who, while awaiting the return of a jury, approached a female law enforcement officer at a courthouse and made statements that she interpreted as sexually aggressive, subsequently grabbed her shoulders and attempted to embrace her, and later approached a different female officer, pushed her against a wall and made suggestive and disparaging remarks); Private Reprimand No. 2008-38 (consensual private reprimand imposed on attorney who made sexually suggestive comments to a co-worker over a period of several years and, on one occasion, kissed the co-worker without

31

consent); Private Reprimand No. 2015-2 (imposing consensual private reprimand on attorney who grabbed the breast of a female employee of a bar, made several sexually suggestive comments to her, followed her from the bar, was arrested, and completed a deferred prosecution agreement after being charged with fourth-degree sexual assault). We note that the private reprimands cited above were consensual reprimands that were issued by referees without this court's review pursuant to our rules. While we recognize that similarly situated respondents should receive comparable levels of discipline, we take this opportunity to advise members of the bar that we are applying increasing scrutiny to attorneys' sexual misconduct. Compare In re Disciplinary Proceedings Against Ritland, 2021 WI 36, 396 Wis. 2d 509, 957 N.W.2d 540. We do so because sexual harassment comes at a heavy price for victims who can suffer significant psychological effects as well as job-related costs, including job loss, reputational harm, impairment of professional opportunities, and irreparable damage to interpersonal relationships at work. Attorneys should be on notice that sexual misconduct by attorneys, whether directed toward fellow lawyers, clients, or others, is not taken lightly. Ritland, 396 Wis. 2d 509, ¶39.

¶54 This court has the responsibility to oversee the practice of law in this state. Consequently, it is our responsibility to determine what is the appropriate level of discipline in an attorney disciplinary proceeding. While the facts of each case are unique, in light of existing precedent,

32

we conclude that Attorney DeLadurantey should be publicly reprimanded. His misconduct is at least as serious as the conduct in Beatse, where we also imposed a public reprimand on an attorney who downloaded pornographic images onto a work computer, sent and received sexually explicit messages on a work email system, and made inappropriate sexual comments to female government employees. Here, a supervising lawyer engaged in unwanted sexually suggestive physical contact with a subordinate employee, repeatedly asked the employee for sexual activity even in the face of clear refusals, and then escalated the situation by climbing into the employee's bed. A private reprimand would unduly depreciate the seriousness of such misconduct. Moreover, we conclude that a public reprimand is necessary to put other members of the bar on notice that such actions will not be tolerated.

¶55 We next address the question of costs, which were $20,530.47 as of November 4, 2021, at the completion of appellate briefing. Attorney DeLadurantey filed an objection to costs, arguing that SCR 22.24(1m) supports a reduction of the costs imposed on him. Supreme Court Rule 22.24(1m) articulates six factors we consider when evaluating a costs challenge. First, we consider the number of counts charged, contested, and proven. In Attorney DeLadurantey's view, the OLR's "major focus" was the sexual harassment charges that the OLR eventually dismissed. He argues that because the OLR dismissed these charges, no costs should be assessed in connection with the OLR's pursuit of these alleged violations. Second, we consider

33

the nature of the misconduct. Attorney DeLadurantey says that had the "offensive personality" charges been the only alleged violations from the outset of this matter, the costs incurred would have been substantially lower. Third, we consider the level of discipline sought by the parties and recommended by the referee. The parties ultimately requested a private reprimand, and the referee recommended a dismissal of the remaining charges. Fourth, we consider Attorney DeLadurantey's cooperation with the disciplinary process. It is undisputed that Attorney DeLadurantey cooperated throughout the disciplinary process. Fifth, we consider prior discipline. Attorney DeLadurantey has no prior disciplinary record. Finally, we consider "other relevant circumstances." Attorney DeLadurantey contends that the "sexual harassment claim was poorly based in fact from the start and all costs in furtherance of the OLR's attempts to satisfy that claim should not be assessed." He suggests we impose ten percent of the total costs, or $2,053.05.

¶56 The OLR maintains that the sexual harassment and offensive personality claims were intertwined, meaning that the OLR's counsel's time was spent concurrently pursuing both. The OLR reminds us that, traditionally, costs are not reduced even when a respondent prevails on some, but not all, counts, and it cites several cases in support of this assertion.

¶57 We generally agree with the OLR on this issue. We decline to deviate from our long-standing disinclination to apportion costs based solely on the number of counts proven or

34

unproven.[14]  We note, moreover, that the referee found the pre-appellate costs to be both reasonable in amount and necessarily incurred, stating:

> Having read and made notes on the hundreds of pages of exhibits provided by both counsel, and having performed many hours of research, I am in a good position to assess the work that went into this case. I find that the sum of $18,311.47 is reasonable, and the costs enumerated were necessarily incurred by the [OLR] in this matter.

¶58 We acknowledge that Attorney DeLadurantey has, by all accounts, cooperated completely with this disciplinary investigation and proceeding.  He ultimately entered a no-contest plea to the "offensive personality" charges, but the referee undertook a lengthy analysis and issued a problematic report, resulting in the OLR's appeal.  The referee billed $5,920.74 for the time spent writing his report which, unfortunately, complicated this matter.  We therefore reduce the costs billed for writing the report by 50 percent ($2,960.37). This matter has also been made unnecessarily complex by the parties' lack of precision in specifying what facts could serve as the factual basis for the no-contest plea.  This lack of clarity required us to order the parties to submit supplemental

---

[14] See, e.g., In re Disciplinary Proceedings Against Eisenberg, 144 Wis. 2d 284, 423 N.W.2d 867 (1988) (declining respondent's request to apportion costs according to the number of misconduct counts that resulted in determinations of professional misconduct); In re Disciplinary Proceedings Against Konnor, 2005 WI 37, 279 Wis. 2d 284, 694 N.W.2d 376 (rejecting argument that costs not be assessed because he would have agreed to a public reprimand, which the referee ultimately recommended as discipline).

35

legal memoranda. Because this was caused in part by the OLR and was not corrected by the referee, we do not require Attorney DeLadurantey to pay the OLR's costs of preparing its supplemental legal memorandum. Consequently, we direct Attorney DeLadurantey to pay costs of $17,570.10.

¶59 Finally, we reject the referee's unsupported recommendation that we "seal" the record in this case. Our rules require that once a disciplinary complaint is filed, the disciplinary proceeding and all papers filed in it are public documents, except where a specific rule or other law mandates confidentiality, or where the court determines that sealing or redaction of a document in a disciplinary proceeding is necessary. SCR 22.40(1).[15] There is nothing in this proceeding that mandates that the record be sealed. It is true that the filings in this proceeding may be embarrassing for everyone involved, but that is not a legal basis for sealing a case record. We recognize that keeping the record in the case open to the public may cause distress to H.M., but the public has a

---

[15] SCR 22.40(1) provides: "Except as otherwise provided in this chapter, all papers, files, transcripts, and communications relating to an allegation of attorney misconduct, an investigation pursuant to SCR Chapters 10, 22, and 31, and monitoring compliance with conditions, suspension, or revocation imposed by the supreme court, are to be held in confidence by the director and staff of the office of lawyer regulation, the members of the district committees, special investigators, the members of the special preliminary review panel, and the members of the preliminary review panel. Following the filing of a complaint or petition, the proceeding and all papers filed in it are public, except where expressly provided otherwise in this chapter, by court order, or by law."

right to learn and understand the process by which this court renders decisions in attorney disciplinary proceedings and we have attempted to minimize the impact of this published opinion by using her initials. There is nothing in this case that overcomes the public's right to observe its government in action.

¶60 IT IS ORDERED that, as discipline for his professional misconduct and violation of SCR 40.15, enforced via SCR 20:8.4(g), Nathan E. DeLadurantey is publicly reprimanded.

¶61 IT IS FURTHER ORDERED that within 60 days of the date of this order, Nathan E. DeLadurantey shall pay to the Office of Lawyer Regulation $17,570.10 for the costs of this proceeding.

¶62 ANN WALSH BRADLEY, J. (concurring).  Although I do not join the per curiam opinion, I concur with the level of discipline it imposes.