## 2025 WI 31

# Supreme Court of Wisconsin



IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
DANIEL P. STEFFEN, ATTORNEY AT LAW

OFFICE OF LAWYER REGULATION,
*Complainant,*

*v.*

DANIEL P. STEFFEN,
*Respondent.*

No. 2023AP1511-D
Decided July 1, 2025

ATTORNEY DISCIPLINARY PROCEEDING

¶1 PER CURIAM. This case is before the court following referee David A. Piehler's report recommending that Attorney Daniel P. Steffen's license to practice law in Wisconsin be suspended for a period of 18 months and that he be ordered to pay the full costs of this disciplinary proceeding. The Office of Lawyer Regulation (OLR) alleged that Attorney Steffen violated Supreme Court Rule (SCR) 20:8.4(b)[1] as a result of his conduct underlying three felony criminal convictions for violating WIS. STAT.

---

[1] SCR 20:8.4(b) provides: "It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

§ 942.09(2)(am)1. by capturing intimate representations of a person without the knowledge or consent of the victim. *See State v. Steffen*, Polk County Case No. 2021CF67 (Feb. 2, 2021).

¶2      Neither party has filed an appeal; thus, the court reviews this matter pursuant to SCR 22.17(2).[2] We accept the referee's recommendation to adopt the material factual assertions in the parties' two stipulations as true. We further agree, based on the stipulations, that there is clear, satisfactory, and convincing evidence that Attorney Steffen violated SCR 20:8.4(b) as a result of his admitted conduct that led to his criminal convictions. However, we reject the referee's recommendation of an 18-month suspension. Based on the seriousness and nature of the misconduct, the need to protect the public, the need to impress upon Attorney Steffen the seriousness of the misconduct, the need to deter other attorneys from similar misconduct, and the relevant aggravating and mitigating factors, we conclude that revocation of Attorney Steffen's license to practice law in Wisconsin is the appropriate sanction in this case. Based on our prior precedent, we further conclude that the revocation should be effective as of June 22, 2023, the date this court granted the OLR's motion to summarily suspend Attorney Steffen's license to practice law under SCR 22.20(1).[3] Finally, we adopt the referee's recommendation that, consistent with this

---

[2] SCR 22.17(2) provides:

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

[3] SCR 22.20(1) ("Summary suspension") provides:

Upon receiving satisfactory proof that an attorney has been found guilty or convicted of a serious crime, the supreme court may summarily suspend the attorney's license to practice law pending final disposition of a disciplinary proceeding, whether the finding of guilt or the conviction resulted from a plea of guilty or no contest or from a verdict after trial and regardless of the pendency of an appeal.

court's general policy under SCR 22.24(1m),[4] Attorney Steffen should pay the full costs of this proceeding, which amount to $9,574.37 as of July 22, 2024.

## Procedural History

¶3     On February 5, 2021, the State charged Attorney Steffen with three counts of violating WIS. STAT. § 942.09(2)(am)1. by capturing intimate representations of a person without knowledge or consent of the victim. The charges related to two victims. Attorney Steffen was prosecuting the first victim while acting as a part-time assistant district attorney and entered into a sexual relationship with her before the case concluded. The second victim was also involved in a sexual relationship with Attorney Steffen and sought his advice on avoiding criminal prosecution for potential criminal acts. Attorney Steffen and both victims testified at trial. A jury convicted Attorney Steffen of all three counts on April 27, 2023. The court entered a judgment of conviction on July 24, 2023.

¶4     On June 22, 2023, following the OLR's motion, this court entered an order summarily suspending Attorney Steffen's license to practice law in Wisconsin pursuant to SCR 22.20.

¶5     The OLR filed a disciplinary complaint on August 18, 2023, alleging Attorney Steffen violated SCR 20:8.4(b) as a result of his actions leading to the above criminal convictions. Attorney Steffen litigated the matter pro se. On January 30, 2024, the parties entered into a stipulation in which Attorney Steffen admitted to most of the underlying factual allegations and admitted to violating SCR 20:8.4(b).

¶6     The matter proceeded to a hearing before the referee on the issue of sanctions on March 19, 2024. Attorney Steffen was the only witness to testify. At the hearing, the parties introduced transcripts of Attorney Steffen's testimony and the testimony of the two victims in the underlying criminal case, as well as the relevant criminal pleadings, jury instructions, verdict, and judgment of conviction. Attorney Steffen introduced two

---

[4] SCR 22.24(1m) provides: "The court's general policy is that upon a finding of misconduct it is appropriate to impose all costs, including the expenses of counsel for the office of lawyer regulation, upon the respondent."

letters as character evidence. The parties entered into a second stipulation of April 2, 2024, regarding Attorney Steffen's lack of previous discipline.

¶7 The referee filed his report on July 1, 2024, containing findings of fact, conclusions of law, and a recommendation as to sanction. The referee filed a recommendation as to costs on August 21, 2024. Neither party has appealed from any aspect of the proceeding.

**Factual Background**

¶8 The referee recommended adopting the salient factual assertions in the parties' two stipulations as findings of fact. The referee also made further factual determinations based on the hearing testimony and exhibits presented by the parties, including the pleadings and testimony from the underlying criminal trial. A brief summary follows.

¶9 Attorney Steffen was admitted to the practice of law in Wisconsin on September 29, 1998. He has no prior disciplinary history. After serving as the elected District Attorney in Polk County, Attorney Steffen began work as a part-time assistant district attorney in both Washburn and Burnett counties in 2017, whilst also maintaining a private criminal and family law practice. As an assistant district attorney in Burnett County, Attorney Steffen covered intake duties, including appearing for the state in new criminal matters, and he possessed the authority to negotiate and dismiss cases.

Victim 1

¶10 Victim 1 was charged in Burnett County with one count of violating a harassment restraining order protecting the father of a child she shared with him. Victim 1 was not represented by counsel. She appeared in court on June 6, 2018, for her initial appearance and pretrial conference and entered a not guilty plea. Within a week, Attorney Steffen and Victim 1 began exchanging "flirty" text messages, and the two discussed going out for a drink.[5]

---

[5] According to the underlying criminal complaint, Attorney Steffen gave Victim 1 his personal cell phone number at the initial pretrial conference.

¶11     A week later, Attorney Steffen mailed a proposed Deferred Judgment of Conviction (DJOC) agreement to Victim 1. Under the agreement, Victim 1 would enter a plea of guilty and the court would withhold entry of judgment until Victim 1 satisfied the terms of the agreement for 12 months (including not committing further criminal acts and no contact with the child's father except for child drop-off), at which point the charges would be dismissed. The agreement would be monitored by the district attorney, who retained the authority to terminate the agreement for cause, including a "good-faith determination based on probable cause that a violation has occurred."

¶12     On June 28, 2018, Victim 1 appeared for a plea hearing, without counsel. The duration of the DJOC agreement was modified from 12 to six months. Victim 1 accepted the agreement and entered a plea of guilty, pursuant to the modified DJOC agreement. The court accepted the guilty plea. Attorney Steffen did not disclose his personal communications with Victim 1 to the judge presiding over the case prior to Victim 1's entry of her guilty plea.

¶13     The same day as the plea hearing, Attorney Steffen gave Victim 1 advice about a pending family court matter involving Victim 1 and the child's father involving the same restraining order that was the subject of the criminal prosecution. Attorney Steffen and Victim 1 then began exchanging text messages of "a sexual nature," including "videos of each other engaged in sexual acts." Attorney Steffen texted pictures of his genitalia to Victim 1, and they texted about "meeting up."

¶14     In July 2018, the Burnett County District Attorney's Office received a referral alleging that Victim 1 had again violated the harassment injunction with her child's father. Attorney Steffen communicated to a paralegal that the July 2018 violation "would not be prosecuted." That same month, Attorney Steffen and Victim 1 began a sexual relationship. Victim 1 later testified that she began having sex with Attorney Steffen "because she believed that [he] could help her with her pending criminal and family law cases."

¶15     On July 30, 2018, law enforcement referred another matter to the Burnett County District Attorney's Office, in which the father of Victim 1's child again alleged that Victim 1 had violated the harassment injunction.

Two months later, the Burnett County District Attorney decided not to prosecute this referral.[6]

¶16    In the interim, Attorney Steffen continued his sexual relationship with Victim 1, with encounters taking place at both their residences and Attorney Steffen's office, even though he "had concerns about whether he could engage in a relationship with Victim 1." On two separate occasions, Attorney Steffen captured an intimate representation of Victim 1 engaged in sex acts with him at his residence without her knowledge or consent, under circumstances in which Victim 1 possessed a reasonable expectation of privacy.[7] Attorney Steffen did not inform the Burnett County District Attorney that he was engaged in a sexual relationship with Victim 1, or that he offered her legal advice, prior to the decision not to prosecute the July 30, 2018 referral.

¶17    On January 3, 2019, the Burnett County District Attorney's office filed a motion to dismiss the criminal matter pending against Victim

---

[6] At the criminal trial, Attorney Steffen denied making the charging decision on these referrals, but the State introduced evidence of notes in Victim 1's file made by Attorney Steffen's paralegal, implying that Attorney Steffen made the charging decisions. One note, dated July 12, 2018, states: "Dan is not going to charge the two newest referrals on [Victim 1]." At the disciplinary sanctions hearing, Attorney Steffen again denied making the referral decisions and claimed to have brought them to the district attorney because he "was very careful not to have anything to do with any decision-making in regard to these future referrals." While the referee did not make a specific factual finding regarding this dispute, our review of the record indicates, that, at a minimum, Attorney Steffen was still involved with the case when these decisions were made, and he stipulated that he failed to inform the district attorney of his relationship with Victim 1 when they were made.

[7] According to the criminal complaint, on two occasions, Attorney Steffen surreptitiously recorded videos of himself and Victim 1 engaged in sexual acts in various stages of undress using an iPad on his dresser and pointing the camera directly at the bed after starting the recording. The referee relied on these allegations in finding that Attorney Steffen intentionally recorded these encounters. Although not contained in the parties' stipulation, the referee noted testimony in the underlying criminal trial that Victim 1 "consented to recording some of her [other] sexual encounters" with Attorney Steffen.

that was the subject of the DJOC agreement. The court granted the motion, and the matter was dismissed.[8]

¶18    Victim 1 eventually disclosed her relationship with Attorney Steffen to a DOJ special agent while incarcerated as a result of another matter. The referee noted that the criminal complaint indicated that the charges came about after Victim 1 "had openly talked about having sexual relations with a Burnett County Assistant District Attorney (ADA) in exchange for leniency on criminal cases . . . in Burnett County."[9]

Victim 2

¶19    In 2017, Attorney Steffen began a sexual relationship with Victim 2, whom he had known since 2007, after the two began exchanging text messages that "were sexual in nature." On August 1, 2017, Attorney Steffen captured an intimate representation of Victim 2 without her consent, under circumstances where Victim 2 had a reasonable expectation of privacy. The circumstances of the recording were similar to the instances where Attorney Steffen recorded Victim 1. During this encounter, Attorney Steffen spoke to Victim 2 about her concern over possible criminal charges resulting from her damaging a mailbox belonging to her daughter's father.[10]

---

[8] At the disciplinary hearing, Attorney Steffen testified that at the time he was involved in a relationship with Victim 1, he erroneously believed that the district attorney's file for Victim 1's criminal matter was "closed" when the DJOC agreement was signed, rather than at the completion of the agreement. However, he also admitted to being aware of news coverage concerning a Burnett County District Attorney engaged in improper conduct towards female defendants and nonetheless "chose to continue [his] sexual relationship with Victim 1 for several months" even though he admitted he was "concerned about getting in trouble because of [his] relationship with her."

[9] Attorney Steffen acknowledged at the disciplinary hearing that he "was dishonest with" law enforcement when questioned about whether he ever had a sexual relationship with someone who was a defendant.

[10] The OLR's disciplinary complaint alleges (and the parties later stipulated) that the conversation about avoiding criminal charges occurred on the same "date" as the recorded sexual encounter. The underlying criminal complaint, however, specifies that the conversation about avoiding criminal charges occurred immediately following the sexual encounter and was also recorded on the same

Attorney Steffen later disclosed that he had recorded their sexual encounter without her knowledge, and Victim 2 became angry and asked him to delete the video. Attorney Steffen deleted the video from his cell phone, but not his iPad. Attorney Steffen later texted Victim 2 that he was aware his iPad was recording the encounter.

¶20    Additionally, based on her trial testimony, the referee noted that Victim 2 attempted to blackmail Attorney Steffen during the investigation into the underlying criminal charges "by offering to not give her cell phones to the DOJ if the respondent forgave a bill owed to him by one of her friends."

Criminal Charges

¶21    The criminal complaint alleged that Attorney Steffen made two unlawful recordings of Victim 1 and another unlawful recording of Victim 2 engaged in sexual acts with him. Attorney Steffen entered pleas of not guilty, and the matter proceeded to trial, during which Attorney Steffen was represented by counsel. Both victims testified at trial.[11] The jury found Attorney Steffen guilty of all three counts.

¶22    On July 24, 2023, the court sentenced Attorney Steffen to 1.5 years' initial confinement and two years' extended supervision on count 1 and count 3 (concurrent), and four years' probation on count 2, consecutive to the other sentences.

¶23    Although not contained in the parties' stipulation, we take judicial notice that an Amended Judgment of Conviction was entered on February 16, 2024, releasing Attorney Steffen from confinement, as he had completed the Earned Release Program. The referee noted that Attorney

---

video file as the recorded sexual acts. The referee further noted that at the criminal trial, Attorney Steffen indicated that he set up the iPad to record the interaction with Victim 2 in order to record their conversation, rather than sexual activity. However, the referee found that "[o]bviously the respondent intended to record activity occurring on the bed."

[11] The referee indicated that at trial, videos of both victims were viewed by the jury.

Steffen spent approximately 10 months in jail and prison and that "part of this time was spent in isolation from the general prison population, for his protection."

## **Report and Recommendation**

¶24     The referee recommended that the court adopt the factual allegations in the parties' stipulations as true, after finding that the stipulations were not the result of plea bargaining, were not entered into under compulsion or coercion, and were entered into after Attorney Steffen chose not to retain counsel. For conclusions of law, the referee recommended that the court conclude: (1) that Attorney Steffen entered into the two stipulations knowingly, intelligently, and voluntarily; (2) that Attorney Steffen had the opportunity to consult with counsel and chose not to do so; and (3) that Attorney Steffen violated SCR 20:8.4(b).

¶25     As to the appropriate level of discipline, the OLR sought a two-year suspension of Attorney Steffen's license to practice law; Attorney Steffen requested a one-year suspension. The referee rejected both proposals and recommended an 18-month suspension.

¶26     The referee first began by citing the relevant factors this court considers when imposing discipline, as recently restated in *In re Disciplinary Proceedings Against DeLadurantey*, 2023 WI 17, ¶52, 406 Wis. 2d 62, 985 N.W.2d 788—namely, "[t]he seriousness, nature, and extent of the misconduct; the level of discipline needed to protect the public; the need to impress upon the attorney the seriousness of the misconduct; and the need to deter other attorneys from similar misconduct." The referee also considered the relevant ABA Standards for Imposing Lawyer Sanctions (ABA Standards) and the ABA's listed aggravating and mitigating factors.

¶27     The referee agreed with both parties that this case involves "serious misconduct." In examining the nature and seriousness of the misconduct, the referee focused on "the facts surrounding the rule that was violated and, in turn, the elements of the crimes for which the respondent was convicted." The referee noted that the offenses involved "surreptitiously taking photos or videos that would likely be highly embarrassing to the person depicted if revealed to others, or if used for personal arousal or entertainment by the individual capturing the images."

¶28     However, the referee did not consider other, uncharged ethical offenses that Attorney Steffen may have committed in the course of his criminal conduct—namely conflict of interest, lack of candor towards the tribunal, and offensive personality. And the referee did not believe that the facts and circumstances surrounding Attorney Steffen's criminal offenses to be "directly relevant." The referee explained:

> . . . [T]he ethical violation charged specifically relates to the crimes of which the respondent was convicted, that is, capturing intimate images without the victims' consent. The facts surrounding how the respondent's assignations with his victims arose are not directly relevant. What is relevant is that once those assignations took place, the respondent engaged in proscribed activity.

¶29     The referee summarized that the nature of the offense here involved the "fundamental" duty to "obey the law" and that Attorney Steffen's conduct in failing to obey the law "harms not only the immediate victims, but also the integrity of the legal system, even more so where the attorney committing the violation is charged with enforcing the law." However, the referee remarked that assessing the seriousness of the offense was complicated by the "confounding factor . . . that, as to both victims, there was a consensual exchange of 'intimate representation' via cell phone text messages." Nonetheless, the referee ultimately concluded that "capturing such images is a most serious offense."

¶30     As to Attorney Steffen's mental state, the referee concluded that "the respondent intended to record activity occurring on the bed. In short, his state of mind was to intentionally create a recording of activity occurring on the bed." The referee rejected the OLR's arguments concerning Attorney Steffen's conduct before and after recording the videos, and also rejected Attorney Steffen's argument that his alleged depression and alcohol use mitigated his conduct into a negligent ethical breach.

¶31     As to the level of harm caused by Attorney Steffen's actions, the referee assessed this case as involving an "injury" but not a "serious injury." The referee explained that Attorney Steffen's criminal conduct caused a "substantial, tangible injury" to the victims—in the form of embarrassment and humiliation by having to testify at trial about their

activities and having the videos shown to the jury—but did not rise to the level of "serious injury."

¶32    Addressing the level of discipline needed to protect the public, courts, and legal system, the referee indicated: "I am not concerned about recidivism. I am confident the respondent has learned his lesson." "Nonetheless, a significant level of discipline is required here to signal to the public and to other attorneys that behavior like this is unacceptable and will be met with stern consequences." Further, the referee indicated that based on Attorney Steffen's hearing testimony and post-hearing brief, "I am confident that the respondent clearly understands the wrongfulness of his conduct and how serious his failures were."

¶33    Based on the nature and seriousness of the offense and other factors set forth in *DeLadurantey*, the referee believed that a suspension under ABA Standard 5.12[12] was the appropriate level of discipline rather than revocation under Standard 5.11,[13] because, in the referee's view, the standards for disbarment "do not apply to this case." The referee remarked that "[a] significant suspension in this case, along with the criminal consequences already suffered by the respondent, should help deter others from similar conduct." The referee explained that "[t]he harm to the justice

---

[12] ABA Standard 5.12 indicates that a suspension is appropriate "when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice."

[13] ABA Standard 5.11 indicates that disbarment is appropriate when:

(a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

system from an Assistant District Attorney being convicted of three felonies is substantial, and undermines public confidence in that system." Further, the referee determined that the nature of the conduct was sufficiently aggravated that "the court's usual policy of progressive discipline should not apply, and that the public interest will be served by causing Mr. Steffen to stand down from the practice of law for a time, allowing him to further reflect on his actions, reform his behavior, and then petition for reinstatement under SCR 22.29."[14] The referee also remarked that while Attorney Steffen had already suffered significant criminal penalties, "further consequences are appropriate because of his failure to abide by the higher standards of conduct that apply to members of the bar."

¶34    The referee next examined the listed aggravating[15] and mitigating[16] factors under ABA Standards 9.22 and 9.32. The referee believed that the combination of the aggravating and mitigating factors also supported imposition of a suspension of Attorney Steffen's license to practice law.

¶35    As to aggravating factors, the referee concluded that Attorney Steffen's misconduct involved a selfish and dishonest motive, involved a pattern of misbehavior given the three counts of which he was convicted, and involved multiple offenses, although the referee refused to consider other ethical violations that could have, but were not, charged. While the OLR argued that Attorney Steffen failed to show remorse for his misconduct, the referee concluded that "I am satisfied from observing the

---

[14] SCR 22.29(1) provides: "A petition for reinstatement of a license suspended for a definite period may be filed at any time commencing three months prior to the expiration of the suspension period."

[15] Aggravating factors include: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge wrongful conduct, vulnerability of the victims, substantial experience practicing law, and illegal conduct. *See* ABA Standards 9.22(b)-(k).

[16] The relevant mitigating factors include: the absence of prior discipline, personal or emotional problems, cooperating with disciplinary authorities, character or reputation, alcoholism, delay in the disciplinary proceeding, the fact that the respondent has suffered other penalties or sanctions for the misconduct, and expression of remorse. *See* ABA Standards 9.32(a)-(l).

respondent at the hearing that he feels remorseful for his actions, although the reason for his remorse may be open to question due to an incomplete record."

¶36    The referee next addressed the vulnerability of the victims and concluded: "I am not convinced either that this is a significant factor here, nor that, under the rather unique facts of this case, the victims of the respondent's crimes were vulnerable in the sense in which that term is usually understood." The referee concluded that the significance of this factor was "attenuated" in this case because the nature of the criminal acts that Attorney Steffen was convicted of involved capturing intimate images of the victims without their consent and did not involve the circumstances under which he entered into sexual relationships with the victims.

¶37    The referee indicated that "[i]t does not appear on this record that the respondent attempted to use his position as an assistant district attorney to secure sexual favors." The referee noted that Victim 1 testified that she pursued a relationship with Attorney Steffen to achieve leniency in her criminal cases and openly talked about it, and that Victim 2 attempted to blackmail Attorney Steffen (by offering to refuse to give her phone to the DOJ in exchange for him waiving a friend's legal bill), such that "[w]ho was being used and who was the user is very unclear based on this record." In the referee's view, both victims "appear to have voluntarily entered sexual relationships with the respondent, without coercion or threats, express or implied" and sought to "exploit the respondent" for personal gain. Thus, the referee did not believe the vulnerability of the victims carried "great weight."

¶38    The referee also concluded that Attorney Steffen had substantial experience practicing law, including ten years as an elected district attorney, such that "he should have known better." Finally, as to aggravating factors, the referee concluded that the illegal nature of the conduct was not a significant aggravating factor because this factor "duplicates the elements of pattern of misconduct and multiple offenses previously discussed."

¶39    Next, as to mitigating factors, the referee indicated: that Attorney Steffen had no prior disciplinary history; that although he raised being at "an emotional low point," no details were provided as to any causal link between his mental state and his misconduct; that although Attorney Steffen cooperated with the OLR, this factor "carries little weight"; that although Attorney Steffen provided laudatory character references,

"they count for rather little in the analysis"; that although Attorney Steffen argued he had an alcohol problem, he presented no medical evidence linking this to his misconduct; and that there were no delays in the disciplinary process.

¶40    However, the referee gave considerable weight to the fact that Attorney Steffen had already suffered other penalties for his misconduct, namely his imprisonment for 10 months, which the referee viewed as a "*de facto* suspension" of his license to practice law: "These were substantial penalties. Therefore this factor is given significant consideration." Finally, as to mitigating factors, the referee again concluded that Attorney Steffen expressed remorse during the disciplinary process.

¶41    As to the length of the suspension, the referee examined prior case law involving sexual misconduct as a guide, and after discussing several,[17] concluded that "[t]his case is one of first impression in that there are no reported disciplinary cases involving a violation of Wis. Stat. § 942.09(am)l." The referee also acknowledged that past disciplinary cases involving sexual misconduct "are of lesser persuasive force both because of the differences in the facts of those cases and because of this court's heightened scrutiny of such violations[.]" After summarizing these cases, the referee remarked: "One clear lesson from these cases is that when behavior crosses the line from simply unethical to criminal, far more substantial penalties are issued. Another (obvious) lesson is that an ongoing pattern of conduct is punished more severely than isolated behavior."

¶42    Turning to the specific length of the suspension, the referee again went over all of the factors discussed above and recommended an 18-month suspension of Attorney Steffen's license to practice law. The referee

---

[17] The referee discussed: *In re Disciplinary Proceedings Against Kratz*, 2014 WI 31, 353 Wis. 2d 696, 851 N.W.2d 219; *In re Disciplinary Proceedings Against Ritland*, 2021 WI 36, 396 Wis. 2d 509, 957 N.W.2d 540; *In re Disciplinary Proceedings Against Voss*, 2011 WI 2, 331 Wis. 2d 1, 795 N.W.2d 415; *In re Disciplinary Proceedings Against Evenson*, 2015 WI 38, 361 Wis. 2d 629, 861 N.W.2d 786; *In re Disciplinary Proceedings Against Hanes*, 2020 WI 89, 394 Wis. 2d 585, 951 N.W.2d 426; *In re Disciplinary Proceedings Against Bruckner*, 161 Wis. 2d 385, 467 N.W.2d 780 (1991); and *In re Disciplinary Proceedings Against King*, 2023 WI 77, 409 Wis. 2d 518, 998 N.W.2d 483.

explained that a "substantial suspension" was required in this case. The referee summarized the pertinent aggravating factors here as "selfish motive, pattern of misconduct, and substantial experience," which "carry much weight." As to mitigating factors, the referee considered Attorney Steffen's prior imprisonment "to carry significant weight in determining the length of any suspension." However, the referee also considered that there was an important need for deterrence:

> The respondent sexually exploited his victims for his own selfish interests. Attorneys must understand that sexual misconduct, whether directed toward clients, employees, or the public, simply will not be tolerated. Such behavior undermines the mission of the bar to be an instrument of justice, degrades the profession, harms its victims, and, particularly when the attorney involved is a prosecutor, lowers public confidence in the legal system.

The referee remarked that but-for Attorney Steffen's imprisonment, a suspension of two years or more would have been appropriate; thus, the referee recommended an 18-months suspension in light of the "substantial" mitigating effect of his incarceration.

¶43 The referee also recommended that, consistent with this court's general policy under SCR 22.24(1m), Attorney Steffen should be required to pay the full costs of this proceeding. The OLR reported costs of $9,574.37 (including the referee invoice), as of July 22, 2024. The referee recommended that the court conclude that these costs were "reasonable, and necessarily incurred in the handling of this matter."

## Analysis

¶44 No appeal was filed, so we review this matter pursuant to SCR 22.17(2). We will affirm the referee's findings of fact unless they are clearly erroneous. *In re Disciplinary Proceedings Against Alfredson*, 2019 WI 17, ¶27, 385 Wis. 2d 565, 923 N.W.2d 869. We review conclusions of law de novo. *Id.* The court may impose whatever sanction it deems appropriate, regardless of the referee's recommendation. *Id.*

¶45 We accept the referee's factual findings based on the stipulated facts contained in the parties' two stipulations, *In re Disciplinary Proceedings Against Schreier*, 2013 WI 35, ¶14, 347 Wis. 2d 92, 829 N.W.2d

744, as well as the additional facts the referee found based on the pleadings and testimony in the underlying criminal trial. We agree with the referee that those factual findings provide clear, satisfactory, and convincing evidence that Attorney Steffen violated SCR 20:8.4(b) by committing the acts underlying his three felony criminal convictions of capturing intimate representations of a person without the knowledge or consent of the victim. *See* WIS. STAT. § 942.09(2)(am)1.

¶46    While we agree with the referee that this case involves "serious misconduct" and that a "stern consequence" is warranted, we reject the referee's recommendation for an 18-month suspension, which is insufficient given the nature and seriousness of the misconduct, the need to protect the public, the need to deter other attorneys from similar misconduct, and the significant aggravating factors present in this case. While we appreciate the referee's thorough analysis of the relevant factors under our prior decisions and the ABA standards, we believe the referee missed the mark in several related respects.

¶47    First, in assessing the nature and seriousness of the misconduct, the referee focused almost exclusively on the elements of Attorney Steffen's underlying criminal offenses and seemed to believe that the surrounding circumstances were not relevant to this determination. As this court has repeatedly recognized, SCR 20:8.4(b) "does not require that an attorney actually have been convicted of a crime for the rule to apply; *we discipline for conduct, not convictions.*" *In re Disciplinary Proceedings Against Ritland*, 2021 WI 36, ¶27, 396 Wis. 2d 509, 957 N.W.2d 540 (emphasis added); *see also In re Disciplinary Proceedings Against Mirza*, 2025 WI 6, ¶24, 415 Wis. 2d 209, 17 N.W.3d. 272 (accord); and *In re Disciplinary Proceedings Against Kranitz*, 2014 WI 47, ¶10, 354 Wis. 2d 710, 848 N.W.2d 292 (examining the "nature of the misconduct" in assessing proper level of discipline arising from criminal convictions for financial crimes).

¶48    For instance, in *Ritland*, 396 Wis. 2d 509, ¶15, the respondent-attorney pleaded no contest to, and was convicted of, two counts of a rarely prosecuted misdemeanor crime (attempted adultery) and one count of misdemeanor disorderly conduct. More serious charges (four felony counts of solicitation of prostitution, one felony count of maintaining a drug trafficking place, and four misdemeanor counts of prostitution) were dismissed and read-in for sentencing purposes. Even though the OLR alleged only a single violation of SCR 20:8.4(b), this court refused to "close its eyes to what the OLR proved Attorney Ritland had done." *Id.*, ¶27.

Likewise, in *Mirza*, 415 Wis. 2d 209, ¶28, this court clarified that charges that were dismissed and read-in at a criminal proceeding can be used as a basis for a finding of misconduct, if the OLR proves the underlying conduct by clear, satisfactory, and convincing evidence at a hearing, or through stipulation or admission. Here, Attorney Steffen stipulated to engaging in conduct that included more than simply capturing intimate representations of persons without their consent.

¶49 Relatedly, while the referee made passing reference to the fact that Attorney Steffen was employed as an assistant district attorney when committing the underlying offenses, the referee seems to have ignored the connection between this position of public trust and the nature of the misconduct. This case involves much more than an attorney ignoring the "fundamental" duty to simply "obey the law." Specifically, the referee seemingly lost sight of the fact that Attorney Steffen was employed as an assistant district attorney when he pursued a romantic and sexual relationship with a defendant in a criminal matter that he was prosecuting and recorded their sexual encounters. Likewise, he did the same thing with respect to Victim 2, who came to him for advice on avoiding penalties for a potential criminal act. Attorney Steffen continued his sexual relationship with Victim 1 while the district attorney's office was responsible for overseeing a deferred judgment of conviction. And he was involved (in some fashion) in the decision to not prosecute additional criminal charges against Victim 1 based on her subsequent conduct that arguably violated the terms of the agreement and could have led to its termination. Attorney Steffen also failed to inform the Burnett County District Attorney of his relationship when the district attorney declined to prosecute a second referral of additional criminal conduct by Victim 1. Likewise, Attorney Steffen failed to inform the judge presiding over Victim 1's case of the relationship while the case remained open. All of this occurred despite Attorney Steffen having concerns about the nature of his relationship with Victim 1. Attorney Steffen admitted to all of these facts in the parties' first stipulation.

¶50 The nature of the misconduct here calls into question the very foundation of the judicial system as a neutral and objective dispenser of justice. Regardless of whether Attorney Steffen engaged in a formal quid pro quo sexual liaison with Victim 1, his conduct, including recording their sexual encounters in close proximity to the criminal referrals, creates the impression that justice is for sale, and that public officials can be bought off with sexual acts. Indeed, the referee acknowledged that the criminal

complaint against Attorney Steffen indicated that Victim 1 "had openly talked about having a sexual relationship with a Burnett County Assistant District Attorney (ADA) in exchange for leniency on criminal cases [she] had pending in Burnett County." Likewise, Attorney Steffen recorded himself engaging in sexual acts with Victim 2 before a contemporaneous recorded conversation in which he provided her advice as to how to avoid criminal prosecution for an alleged act of property damage.

¶51 In short, the overall nature of Attorney Steffen's misconduct does not simply involve recording sexual acts without the consent of his victims; it involves an assistant district attorney abusing his position of power and authority. As the referee stated, Attorney Steffen "sexually exploited his victims for his own selfish interests." Further, he did so while holding a position of public trust with the ability to exercise the prosecutorial powers of the state over his victims.

¶52 In *In re Disciplinary Proceedings Against King*, 2023 WI 77, 409 Wis. 2d 518, 998 N.W.2d 483, this court quoted, with approval, the referee's acknowledgement that a district attorney's repeated sexual harassment of female subordinates was aggravated by the nature of his position of public trust. "This is particularly so where the respondent was the District Attorney, responsible for overseeing law enforcement in his county. As such, he should have upheld the highest standards of behavior." *Id.*, ¶31. Thus, the referee here was wrong to assert that "[t]he facts surrounding how the respondent's assignations with his victims arose are not directly relevant." And contrary to what the referee indicated, the fact that both victims apparently engaged in a consensual exchange of other intimate representations via text messages with Attorney Steffen is not a "confounding factor," given the surrounding circumstances discussed above.

¶53 Similarly, in assessing the vulnerability of the victims as an aggravating factor, the referee erred in focusing on whether Attorney Steffen engaged in express quid pro quo sexual encounters with them and whether he "attempted to use his position as an assistant district attorney to secure sexual favors." The referee rejected the OLR's concern that as to Victim 2, Attorney Steffen abused his "relative power over her" by counselling her on how to avoid potential criminal charges immediately after recording a sex act as being "speculative." The referee also appears to have engaged in victim-blaming by focusing on Victim 1's expressed intent to secure a benefit from Attorney Steffen by entering into a sexual

relationship with him, and by noting that Victim 2 offered to withhold evidence from the DOJ in exchange for Attorney Steffen reducing a legal bill for her friend.

¶54 Contrary to what the referee indicated, the record is not "very unclear" as to "[w]ho was being used and who was the user." Both victims were vulnerable by the very fact that Attorney Steffen was an assistant district attorney and held the power of the justice system over their head like the proverbial Sword of Damocles. Attorney Steffen was actively prosecuting Victim 1 and his office had the power to terminate her DJOC agreement. In light of the fact that the district attorney's office received two further criminal referrals relating to Victim 1 that either Attorney Steffen or the elected district attorney chose not to prosecute during the course of Attorney Steffen's undisclosed sexual relationship with Victim 1, it is difficult for an outside observer to conclude that those decisions were not affected by that relationship. And although the referee noted that the video recording of Victim 2 does not indicate that Attorney Steffen explicitly suggested that "he might be involved in bringing [criminal charges] to secure sexual favors in return for forbearing such actions," given the proximity of Attorney Steffen's discussion with Victim 2 about her concern with criminal prosecution and the recorded sexual acts, that particular subtext was undoubtedly present.

¶55 In short, we conclude that the circumstances surrounding Attorney Steffen's criminal conduct—specifically, his status as an assistant district attorney who was actively prosecuting Victim 1 and who counselled Victim 2 about avoiding potential criminal charges—affects both the seriousness of the offense and aggravates the nature of the misconduct, given the inherent vulnerability of the victims.

¶56 That said, we agree with the referee's assessment of other potential aggravating factors that are particularly relevant here. Specifically, we agree that all of the following are significant aggravating factors: the misconduct in this case involves a "dishonest or selfish motive"; there is a clear "pattern of misconduct," based on the multiple underlying criminal convictions; and Attorney Steffen's "substantial experience in the practice of law," including his previous service as an elected district attorney.

¶57 As to mitigating factors, we conclude that the referee gave undue weight to the fact of Attorney Steffen's imprisonment. As noted,

Attorney Steffen was sentenced to 1.5 years' initial confinement on counts 1 and 3 of the criminal complaint, to be served concurrently. He was released from incarceration after approximately 10 months under the Earned Release Program. While this fact is entitled to some weight under ABA Standard 9.32(k), given the seriousness of the misconduct and other aggravating factors, we do not believe it is a "substantial" mitigating factor. Likewise, while we agree that Attorney Steffen's lack of prior discipline and expression of remorse qualify as mitigating factors under the ABA Standards, they come nowhere close to offsetting the egregiousness of the misconduct and its effect on the integrity of the justice system.

¶58  In light of the above, we disagree with the referee that an 18-month suspension constitutes the type of "stern consequence" required under the facts and circumstances in this case. Instead, we conclude that revocation of Attorney Steffen's license to practice law in Wisconsin is the appropriate sanction, based on the nature of the violation, the surrounding circumstances, the aggravating facts discussed above, and the relevant ABA Standards. Revocation is appropriate given the need to protect the public, deter other attorneys from similar misconduct, and impress upon Attorney Steffen the serious nature of his misconduct.

¶59  As this court has frequently stated, "since no two disciplinary cases are precisely the same, there is no standard sanction for any particular misconduct." *In re Disciplinary Proceedings Against Luening*, 2023 WI 76, ¶46, 409 Wis. 2d 493, 998 N.W.2d 493. We have recently emphasized, however, that "sexual misconduct by attorneys, whether with clients or non-clients, is not taken lightly." *Ritland*, 396 Wis. 2d 509, ¶39. And we have given members of the bar notice that "we are applying increasing scrutiny to attorneys' sexual misconduct." *DeLadurantey*, 406 Wis. 2d 62, ¶53; *see also Ritland*, 396 Wis. 2d 509, ¶37 ("[A]ttorneys who engage in sexual misconduct do so at their professional peril.").

¶60  Moving beyond these general principles, we turn next to ABA Standard 5.11(b),[18] which recognizes that disbarment (revocation in Wisconsin) is appropriate when "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that

---

[18] ABA Standard 5.11(a) indicates that disbarment is appropriate for certain enumerated acts of "serious criminal conduct" that are not present here.

seriously adversely reflects on the lawyer's fitness to practice." Here, Attorney Steffen was found guilty of surreptitiously recording sexual acts with two victims without their knowledge and consent under circumstances where they possessed a reasonable expectation of privacy. Attorney Steffen further stipulated that he did not inform the circuit court or his superior about his sexual relationship with Victim 1 while his office was actively prosecuting her, in charge of supervising her DJOC agreement, and elected not to prosecute additional criminal referrals that arguably would have violated the terms of the DJOC agreement and justified voiding it. Attorney Steffen provided legal advice to Victim 2 about avoiding criminal penalties for alleged criminal acts nearly contemporaneously with the recorded sexual acts. And at the disciplinary hearing, Attorney Steffen acknowledged that he "was dishonest with" law enforcement when questioned about whether he ever had a sexual relationship with someone who was a defendant. We conclude that, at a minimum, Attorney Steffen's conduct, taken as a whole, constitutes "intentional conduct involving dishonesty, . . . deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." *See* ABA Standard 5.11(b).

¶61    Turning to our prior cases, we again emphasize that no two disciplinary cases are the same. We also note that this is the first instance in which this court has been confronted with a lawyer who was found criminally liable for violating WIS. STAT. § 942.09(am)1. Nonetheless, examining prior relevant cases confirms that revocation is appropriate in this instance.

¶62    In *Ritland*, 396 Wis. 2d 509, we suspended an attorney with no prior discipline for a period of two years for violating SCR 20:8.4(b) based on two convictions for attempted adultery and disorderly conduct involving acts of sexual impropriety with two women, including a former client. The misconduct at issue in the present case is more serious than that in *Ritland* given Attorney Steffen's status as an assistant district attorney, his pattern of misconduct, and the uniquely vulnerable nature of his victims, particularly Victim 1, whom Attorney Steffen was actively prosecuting.

¶63    In *King*, 409 Wis. 2d 518, we imposed a one-year suspension on the license of an elected district attorney who violated numerous supreme court rules after repeatedly sexually harassing female office employees and appearing in court while impaired. Again, the nature of the misconduct in this case and the aggravating factors already discussed

suggest a significantly harsher penalty is warranted in this case than in *King*.

¶64 In *In re Disciplinary Proceedings Against Voss*, 2011 WI 2, 331 Wis. 2d 1, 795 N.W.2d 415, we suspended an attorney with one prior public reprimand for a period of four years and eight months, based on the attorney's sexual relationship with a client who had a history of mental illness and alcohol abuse, and the attorney's subsequent attempts to intimidate and discredit the client and her family. The present case also involves victims who were vulnerable by nature of their relationship with Attorney Steffen and his position as an assistant district attorney. In light of the additional facts discussed above concerning Attorney Steffen's prosecution of Victim 1 and counselling Victim 2 on avoiding potential criminal charges, a harsher sanction than in *Voss* is appropriate here.

¶65 And in *In re Disciplinary Proceedings Against Hanes*, 2020 WI 89, 394 Wis. 2d 585, 951 N.W.2d 426, we imposed a four-year suspension on an attorney based on criminal conduct with a non-client that resulted in a misdemeanor criminal conviction for fourth-degree sexual assault and three felony criminal convictions for second-degree recklessly endangering safety, fleeing/eluding an officer, and bail jumping. While in some respects the nature and extent of the criminal conduct at issue here is not as severe as in *Hanes*, in other ways it is worse. *Hanes* did not involve an assistant district attorney who was actively prosecuting one of his victims and who advised another on how to avoid potential criminal charges during the course of a sexual relationship. That is, while the respondent-attorney in *Hanes* committed multiple serious criminal acts, those actions did not diminish the integrity of the judicial system as severely as did Attorney Steffen's.

¶66 We recognize that Attorney Steffen possesses no prior disciplinary history and that ordinarily "this court follows a general policy of progressive discipline." *In re Disciplinary Proceedings Against Tjader*, 2018 WI 96, ¶14, 384 Wis. 2d 51, 918 N.W.2d 418. However, we have not followed this general policy when confronted with cases of egregious conduct that undermine the integrity of the judicial system. *See, e.g., In re Disciplinary Proceedings Against Blomme*, 2022 WI 80, ¶5, 405 Wis. 2d 122, 982 N.W.2d 100 (granting petition for consensual license revocation of attorney with no prior discipline who was convicted of two federal counts of distributing child pornography while serving as a judge); *In re Disciplinary Proceedings Against Merry*, 2024 WI 16, ¶38, 411 Wis. 2d 319, 5 N.W.3d 285 ("[W]hen the

circumstances have called for it, we have revoked an attorney's law license for misconduct even where . . . the attorney had no prior disciplinary history.").

¶67     In light of all of the above, we conclude that revocation of Attorney Steffen's license to practice law is the appropriate type of "stern consequence" that the referee indicated was necessary, given "[t]he seriousness, nature, and extent of the misconduct; the level of discipline needed to protect the public; the need to impress upon the attorney the seriousness of the misconduct; and the need to deter other attorneys from similar misconduct." *DeLadurantey*, 406 Wis. 2d 62, ¶52.

¶68     However, there is another matter not addressed by the referee; namely, the date of commencement of the sanction, given that this court summarily suspended Attorney Steffen's license to practice law on June 22, 2023, based on the conduct at issue underlying his criminal convictions. When this court has summarily suspended an attorney's license to practice law following a qualifying criminal conviction, this court has repeatedly concluded that a lengthy disciplinary suspension should be made retroactive to the date of the summary suspension. *See Kranitz*, 354 Wis. 2d 710, ¶11 ("We further conclude that the suspension should be made effective as of the date on which we summarily suspended Attorney Kranitz's license . . . . This is consistent with our practice in previous disciplinary proceedings involving a prior summary suspension following a criminal conviction.") (collecting cases). This court has followed the same practice when revoking an attorney's license following a summary suspension for the same conduct. *See In re Disciplinary Proceedings Against Dudas,* 2021 WI 5, ¶14, 395 Wis. 2d 345, 953 N.W.2d 870 ("[W]e agree that it is appropriate to set the commencement date of the revocation for May 21, 2014, the effective date of the underlying SCR 22.20 summary suspension."). We do likewise here.

¶69     Finally, we agree with the referee that we should follow our general policy under SCR 22.24(1m) of imposing the full costs of this proceeding on Attorney Steffen, which total $9,574.37 as of July 22, 2024. There are no extraordinary circumstances present that would justify departing from the court's standard practice of imposing full costs on the respondent attorney. *See In re Disciplinary Proceedings Against Lister*, 2015 WI 8, ¶47, 360 Wis. 2d 330, 858 N.W.2d 687.

Per Curiam

¶70     IT IS ORDERED that the license of Attorney Daniel P. Steffen is revoked, commencing June 22, 2023.

¶71     IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Daniel P. Steffen shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $9,574.37 as of July 22, 2024.

¶72     IT IS FURTHER ORDERED that Attorney Daniel P. Steffen shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

¶73     IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. *See* SCR 22.28(3).

IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
ATTORNEY DANIEL P. STEFFEN
ANNETTE KINGSLAND ZIEGLER, J., concurring.

ANNETTE KINGSLAND ZIEGLER, J., with whom JILL J. KAROFSKY, C.J., and REBECCA GRASSL BRADLEY, BRIAN K. HAGEDORN, and JANET C. PROTASIEWICZ, JJ., join, concurring.

¶74    I concur in the court's order revoking Attorney Steffen's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for reinstatement after a period of five years. *See* SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. *See In re Disciplinary Proceedings Against Moodie*, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, *In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings*, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. *See* S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶75    For the foregoing reason, I concur.